IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MIRNA REYES, EMMANUEL LEWIS, JENNIFER BUNCH, and BRIAN COVERT<br>        Plaintiffs,<br><br>VS.<br><br>NORTH TEXAS TOLLWAY AUTHORITY, PAUL WAGEMAN, ALLEN CLEMSON, JANICE DAVIS, KIVEN WILLIAMS, VICTOR VANDERGRIFF, and CLAYTON HOWE<br>        Defendants. | CAUSE NO.: 3:10-CV-00868-G<br><br>**FIRST AMENDED COMPLAINT – CLASS ACTION** |

Plaintiffs, Mirna Reyes ("Ms. Reyes"), Emanuel Lewis ("Mr. Lewis"), Jennifer Bunch ("Ms. Bunch"), and Brian Covert ("Mr. Covert") (collectively, "Plaintiffs"), file this their First Amended Complaint against North Texas Tollway Authority ("NTTA"), Paul Wageman, Allen Clemson, Janice Davis, Kiven Williams, Victor Vandergriff, and Clayton Howe, and allege the following:

**I.
NATURE AND PURPOSE OF THE ACTION**

1.    For the past three years the North Texas Tollway Authority ("NTTA") has engaged in the practice of assessing unconstitutional and random "Administrative Fees" on tollway users who fail to pay invoices within a certain period of time.

2.    Section 366.178 of the Texas Transportation Code legislates that the NTTA may "charge an administrative fee of not more than $100 to **recover** the **cost** of an unpaid toll." (emphasis added).  When the NTTA invoices a patron for their use of a tollway, that invoice often includes more than one transaction – in other words it includes a number toll charges that need to be paid.  While the cost of that one invoice and any subsequent violation invoice is fixed

(and in fact amounts to under $10), the NTTA assesses its "Administrative Fees" based on each individual toll charge/transaction. Accordingly, while the true administrative cost of the unpaid tolls on one violation invoice are less than $10 and at the very least are of a fixed amount as determined by the invoice that they are collectively sent out on, the NTTA regularly and customarily charges over $100 to recover the "cost of an unpaid toll." Such has been done for at least the last three years. This is a well-known and even ratified NTTA policy that is systematically carried out.

3. The Administrative Fees assessed by the NTTA, when in excess of the $100 maximum and when paid by Plaintiffs in part or whole, constitute an unconstitutional taking under Federal and State law and a violation of due process. Furthermore, the acts of the Defendants in charging and collecting from Plaintiffs different sums, despite the same costs per invoice, deprives the Plaintiffs and class of equal treatment and protection as due by law. Finally, the acts of the Defendants constitute prohibited excessive fines under both the United States and Texas Constitutions.

4. Through its custom and practice of imposing and collecting fees not authorized by statute or in excess of those allowed by statute, and converting those fees to the use of the NTTA, the NTTA has usurped the legislative process which would, and has, determined the appropriate fees to be charged.

5. The actions of the NTTA, as well as the other Defendants in their individual and official capacities, were and are neither negligent nor unexpected. They were, and remain, the implementation and enforcement of a policy that grossly deviates from the Texas statute which authorizes and limits administrative fees.

6.   This is a class action.  Plaintiffs bring this action on their own behalf and on behalf of all similarly situated individuals.

## II.
## REQUEST FOR JURY TRIAL

7.   Plaintiffs hereby request a jury trial on all issues of fact.

## III.
## JURISDICTION AND VENUE

8.   This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 (federal question jurisdiction) as this action concerns laws of the United States and violations of the United States Constitution.

9.   Venue is appropriate in this District because members of the proposed class are residents of the District, and the events complained of occurred in the Northern District of Texas.

## IV.
## PARTIES

10. Plaintiff Mirna Reyes is a resident of Dallas, Dallas County, Texas.

11. Plaintiff Emmanuel Lewis is a resident of Irving, Dallas County, Texas.

12. Plaintiff Jennifer Bunch is a resident of Frisco, Texas.

13. Plaintiff Brian Covert is a resident of Richardson, Texas.

14. Defendant North Texas Tollway Authority was at all relevant times a political subdivision of the State of Texas and can be served with process by serving its registered agent John B. Dahill at 5900 W. Plano Parkway, Suite 100, Plano, Texas  75093.

15. Paul Wageman was the Chairman of the Board of Directors for the NTTA from 2006 until the end of September, 2010.  He can be served with process at 5900 W. Plano Parkway, Plano, Texas 75093.  He is being sued in his individual and official capacities.

16. Victor Vandergriff was Vice Chairman of the Board of Directors for the NTTA and served on the board since 2007.  In October 2010 Mr. Vandergriff became Chairman of the Board of Directors for the NTTA.  He can be served with process at 5900 W. Plano Parkway, Plano, Texas 75093.  He is being sued in his individual and official capacities.

17. Allen Clemson is the Executive Director for NTTA and can be served with process at 5900 West Plano Parkway, Plano, Texas 75093. He is being sued in his individual and official capacities.

18. Janice Davis is the Chief Financial Officer for NTTA and can be served with process at 5900 West Plano Parkway, Plano, Texas 75093. She is being sued in her individual and official capacities.

19. Kiven Williams is the Director of Toll Collections for NTTA and can be served with process at 5900 West Plano Parkway, Plano, Texas 75093.  He is being sued in his individual and official capacities.

20. Clayton Howe is the Assistant Executive Director of Operations for NTTA and can be served with process at 5900 West Plano Parkway, Plano, Texas 75093.  He is being sued in his individual and official capacities.

## V.
## FACTUAL BACKGROUND

**A.**    **The NTTA Policy to Fleece North Texas Citizens.**

21.     In 1997, the Texas Legislature formed the regional tollway authorities and the North Texas Tollway Authority was thus created.  The NTTA is authorized and empowered by the Regional Tollway Authority Act to construct, maintain, repair and operate turnpike projects in North Texas.

22.     The NTTA'S strictly enumerated powers control its existence and fix the amounts that it may charge for administrative fees. As such, the NTTA is entitled to charge certain toll fees.

23.     Finding that its revenues needed bolstering the NTTA, through its directors and the individual defendants herein, engaged in and implemented an "administrative fee" practice that far exceeded the legislative and constitutional bounds it was required to keep.

24.     Specifically: Section 366.178 of the Texas Transportation Code provides that: "an authority may charge an administrative fee of not more than $100 to recover the cost of collecting an unpaid toll."  Of course, the "cost of collecting" a toll is different from assessing a fee for each time a person passes through a toll and fails to pay (a "transaction").  This is because any permissible statutory charge must be based upon "cost" of collection rather than a profit-making scheme.

25.     Despite the clear parameters of section 366.178, the Defendants adopted, implemented, and enforced the following scheme, policy and practice:

a.  Drivers on NTTA tollways are offered three ways to pay for their tolls: (1) the use of cash; (2) the use of a tolltag; and (3) the use of a video toll commonly referred to as ZipCash.

b.  If the NTTA is not paid within 30 days by a customer for that customer's passage through a toll, the NTTA sends out an invoice.  The cost of that invoice is roughly $3.86 before any payment.  The invoice may, and usually does, contain more than one transaction (time a person passes through each toll without paying).

c.  If the invoice is not paid, the NTTA sends out a "Violation Invoice."  This costs the NTTA approximately $4.61.

d.  In its Violation Invoice, the NTTA initially assessed an "administrative fee" of $25.00 for each transaction listed on that invoice.  In 2010 that administrative fee was lowered to $8.33 for each transaction listed on the Violation Invoice.

e.  Thus, under the 2010 administrative fee, if there are ten transactions listed on one Violation Invoice, the NTTA assesses an administrative fine of $80.33.  If there

are one hundred transactions on a Violation Invoice, the NTTA assesses an administrative fine of $800.33.  The true cost for the NTTA remains fixed regardless of whether the fine is $80.33 or $800.33.  Of course, before 2010 when the NTTA reduced its fine to $8.33 for each transaction, the fine was $25 per transaction.  In other words, on a Violation Invoice including ten transactions the administrative fee would be $250 (despite costs being under $10).

26.      Of course the belief that the NTTA was, and does, charge greater than its costs was, and is, shared by many.  Thus, for example, in 2009 Texas State Senator Jane Nelson contested the "exorbitant" penalties assessed by the NTTA.  The Senator stated that the millions of dollars collected in penalties were simply a way for the NTTA to make up its lost revenue, rather than to collect an administrative cost.  The senator further stated: "It's gotten out of hand. What really bothers me is this is not supposed to be a revenue source for the NTTA."  *See* Exhibit "A", attached hereto.  Citizen complaints were also made, including the complaint that employees at the NTTA were threatening customers that if they did not pay the toll bill, the customer would be arrested.  When Senator Nelson questioned the NTTA on their billing practices the NTTA became very defensive.

27.      In November, 2009, Paul Wageman (Chairman of the Board of Directors for NTTA from 2006 until the end of September, 2010) specifically stated to the Dallas Morning News that the NTTA was reviewing the violations collection process as well as the administrative fees and that an organizational assessment was being prepared.  Of course, instead of reducing administrative fees to reflect actual costs, the staff of the NTTA proposed a reduced administrative fee per each toll unpaid, and then only if said driver paid within 30 days.  That policy was thereafter adopted and implemented by the NTTA.

28.      In March of 2010 the NTTA Board of Directors voted 8-1 to continue its administrative fee charging policy.  At that time, Paul Wageman was a member of the NTTA board as was Victor Vandergriff.  That vote specifically included, concerned, and discussed the

NTTA fee structure and policy in which fees are assessed for each transaction on an invoice rather than one fee for each invoice. Members of the Board who discussed and voted to maintain and continue implementing the policy included Paul Wageman and Victor Vandergriff, at that time chairman and vice-chairman respectively.

29. Of course, the public outcry against the unconstitutional methods adopted by the NTTA continued and was, ignored. Thus, for example, Dallas Morning News reporter Michael Lindenberger has this to say:

> "NTTA says that sending out a late notice, to drivers who don't pay within 30 days, costs the authority $3.86. It loses money on that, because the flat late fee for the whole invoice -- no matter how many individual transactions are involved -- is just a $2.50.
>
> If no payment is received in about 15 more days, NTTA sends out a violation notice, a step that costs NTTA $4.61 more per invoice. That means it has spent $8.47 so far to get delinquent customer to pay up.
> To cover those costs, NTTA now adds an $8.33 fine for every transaction on that invoice, on top of the $2.50 late fee. Even if the invoice was for just one day's worth of tolls, it can easily include 10 transactions, as that is how many a round trip on the full length of the President George Bush Turnpike will incur.
> So now, to use this example, NTTA's costs are $8.47 to send an invoice to a violator, and if he or she pays, NTTA gets the tolls owed, plus $2.50 late fee, plus $83.33 in fines. If the invoice covers less than 10 transactions, the fees are less, but if it covers several days, or a week's worth, they are much much more.
> **This isn't covering costs, it's winning the lottery**." Attached hereto as Exhibit "B" (emphasis added).

30. Wageman, known as a hands-on-manager, played a direct role both in implementing the NTTA fee structure and policy, continuing it, defending it, and overseeing it. As chairman of the Board of Directors, Wageman actively discussed the fee structure and policy and, in fact, voted to implement and maintain the same.

31. Victor Vandergriff was, and remains, a member of the Board of Directors and also directly voted for implementation and maintenance of the NTTA fee structure and policy. As the current chairman of the Board of Directors, Mr. Vandergriff exercises chief authority over

all financial matters.  This can be further seen by the NTTA Organizational Chart in its Financial Reports.  Importantly, in 2009, Mr. Vandergriff has addressed the issue of the administrative fees and has stated that the NTTA should ensure that its fees reflect only the costs the agency incurred in collecting late tolls, plus a modest fee to serve as an incentive to get a toll tag. However, despite that prior statement Vandergriff has not changed the fee structure to reflect costs, as opposed to wanton revenue.

32.      Allen Clemson is the Executive Director of the NTTA and was elected to that post in May, 2009.  Prior to that date Janice Davis occupied that role (since December 2008).  As Executive Director, Mr. Clemson's key responsibilities include financial oversight as well as the creation of financial policies for the NTTA.  These roles and the creation of said policies are expressly conveyed in Mr. Clemson's staff profile at the NTTA website.  In Mr. Clemson's role as Executive Director, he directly oversaw the NTTA fee structure and policy as well as its maintenance.  Mr. Clemson addressed and defended the fees by alleging that their purpose was, and is, to help pay for the cost of collection as opposed to an additional revenue stream.

33.      Janice Davis was Executive Director of the NTTA from December 2008 until May, 2009.  In that capacity her responsibilities included financial oversight as well as the creation of financial policies for the NTTA.  Thereafter, Ms. Davis moved to the position of Chief Financial Officer of the NTTA.  As stated on the NTTA website:

> "At the NTTA, Ms. Davis will direct all activities and operations of the Finance Department, including overseeing related department activities, coordinating consultant contracts and activities, ensuring strong financial operations, coordinating with management on general agency administration and representing the agency in meetings and conferences."

Of course the implementation and enforcement of the NTTA fees and administrative charges fall directly within Ms. Davis lap.  Ms. Davis was instrumental in

the implementation as well as oversight of these policies and consistently briefed and briefs the NTTA Board of Directors with respect to revenue at the NTTA.

34.     Kiven Williams is the Director for Toll Collections for the NTTA.   As stated on the NTTA website: "His duties include planning, organizing, supervising and directing the operations of the Toll Collection Department, including budget oversight and all related toll plaza operational functions of the NTTA.   Of course in that role, Mr. Williams was, and is, instrumental in the enforcement and operation of the unconstitutional administrative assessments and fees.

35.     Clayton Howe is the Assistant Executive Director of Operations for the NTTA.   In that role he maintains supervisory authority over the Director of Toll Collection and Value.   Appointed to the position in 2007, his role is specifically with respect to oversight of customer service, maintenance, system and incident management, toll collection, and information technology.     Of course, in that position, and enmeshed in the implementation and enforcement of the administrative fees, Mr. Howe has expressly examined the NTTA's policy and, in the face of much criticism, defended it as appropriate and equitable.

**B.**     **Mirna Reyes – One of Many Charged and Forced to Pay NTTA Unconstitutional "Fees"**

36. As previously stated, Drivers on NTTA tollways are generally offered three ways to pay for their tolls: (1) the use of cash, (2) the use of a tolltag, and (3) the use of a video toll commonly referred to as ZipCash.   In some instances, however, such as the Wycliff Ave on the southbound North Dallas Tollway, paying a toll is limited to either a tolltag or ZipCash use. Whenever ZipCash is used, NTTA sends the registered owner of the car an invoice to their home address.

37. At the times relevant to this petition, Ms. Reyes did not have a tolltag, and as such, she used ZipCash where available and at various times from May 2008 to August 2009.   As with NTTA's stated policy, she received invoices detailing her ZipCash usage on a monthly basis.  When Ms. Reyes inadvertently failed to pay the invoices in a timely manner, Defendants assessed an administrative fee for each and every time she used ZipCash.  For example, when she used ZipCash fifteen times as reflected in Invoice ID 6291002, she was charged fifteen administrative fees for the failure to pay the one invoice.  Ultimately, the administrative fees charged exceeded $3,000.00.  Ms. Reyes ultimately paid $950.00 (still well in excess of the tolls incurred and costs incurred by the NTTA).

38. The NTTA lacks the statutory authority to charge these administrative charges to Ms. Reyes and other ZipCash users.  The NTTA is only permitted to charge an administrative fee of up to $100 dollars to cover the cost of collection.   Ms. Reyes failure to pay each invoice constituted a single event of non-payment and those invoices sent out constituted a fixed administrative cost.

**C.   Jennifer Bunch – Another of Many Charged and Forced to Pay NTTA Unconstitutional "Fees"**

39.    At the times relevant to this petition, Ms. Bunch did not have a tolltag, and as such, she used ZipCash where available at various times from November 2007 to mid-2009.   As with NTTA's stated policy, she purportedly received invoices detailing her ZipCash use.  Ms. Bunch failed to pay the invoices in a timely manner.

40.    In December 2009 Ms. Bunch received a "Violation Invoice" from the NTTA. The single violation invoice listed 14 transactions, dating from May 2009 to September 2009, and amounting to a collective toll of 19.58.  An administrative fee of $25 was demanded for each

transaction.  In other words, even though only one invoice was sent, Ms. Bunch was charged $350.00 in administrative fees.  The violation invoice is attached hereto as Exhibit "C".

41.     The Violation invoice warned Ms. Bunch that "[f]ailure to pay the toll could result in the transfer to a violation invoice and/or collection agency.  These violations could result in the issuance of a traffic citation which carry a fine of up to $250.00 per citation, plus court costs, the tolls and administrative fees."  In January of 2010, Ms. Bunch paid the fines in full.

42.     The NTTA lacks the statutory authority to charge these administrative charges to Ms. Bunch and other ZipCash users.  NTTA is only permitted to charge an administrative fee, up to $100 dollars to cover the cost of collection.    Ms. Bunch's failure to pay her invoice constituted a single event of non-payment and the invoice sent out constituted a fixed administrative cost.

**D.**  **Brian Covert – Another of Many Charged and Forced to Pay NTTA Unconstitutional "Fees"**

43.     Mr. Covert was also a tollway user.  In December 2009 Mr. Covert received an invoice from the NTTA listing 15 transactions dating from September 19, 2009 to October 23, 2009.  Mr. Covert failed to pay the NTTA invoices in a timely manner.

44.     In February of 2010 Mr. Covert received a "Violation Invoice" from the NTTA. The single violation invoice listed the same 15 transactions, amounting to collective tolls of 28.16.  However, an administrative fee of $25 was demanded for each transaction.  In other words, even though only one invoice was sent, Mr. Covert was charged $550.00 in administrative fees.  The violation invoice is attached hereto as Exhibit "D".

45.     The Violation Invoice warned Mr. Covert that "[f]ailure to pay the toll could result in the transfer to a violation invoice and/or collection agency.  These violations could

result in the issuance of a traffic citation which carry a fine of up to $250.00 per citation, plus court costs, the tolls and administrative fees."  Mr. Covert ultimately paid approximately $250 and purchased a toll tag (a condition of the reduced payment).

46.     The NTTA lacks the statutory authority to foist these administrative charges to Mr. Covert and other ZipCash users.  NTTA is only permitted to charge an administrative fee, up to $100 dollars to cover the cost of collection.    Mr. Covert's failure to pay his invoice constituted a single event of non-payment and the invoice sent out constituted a fixed administrative cost.

E.     **Emmanuel Lewis – Another Victim of NTTA Over-Charging.**

47.     Emmanuel Lewis also complains of the administrative fees charged by NTTA.

48.     In November of 2009 Mr. Lewis received a "Violation Invoice" from the NTTA. The single violation invoice listed tolls amounting to $46.91 but an astounding administration fee of $1,546.91.  That fee was later raised to over $4,400.00.     The violation invoice is attached hereto as Exhibit "E".

49.     The Violation Invoice warned Mr. Lewis that "[f]ailure to pay the toll could result in the transfer to a violation invoice and/or collection agency.  These violations could result in the issuance of a traffic citation which carry a fine of up to $250.00 per citation, plus court costs, the tolls and administrative fees."     Ultimately, Mr. Lewis was assessed approximately $10,000.00 in charges for approximately $300 in tolls and the NTTA sent the matter to collections.  As a result, Mr. Lewis suffered damage to his credit.

50.     The NTTA lacks the statutory authority to charge these administrative charges to Mr. Lewis.  NTTA is only permitted to charge an administrative fee, up to $100 dollars to cover

the cost of collection.   Mr. Lewis' failure to pay his invoice constituted a single event of non-payment and the invoice sent out constituted a fixed administrative cost.

## VI.
## CLASS ACTION ALLEGATIONS

51.     Pursuant to Fed. R. Civ. P. 23(b)(3), and 23(b)(2) Plaintiffs bring this action on behalf of themselves, and all others similarly situated, as representatives of the following class (the "Class"):

> 1. Each and every individual who, at any time from 2008 to present used an NTTA tollway and who was, as a result of nonpayment of charges incurred based upon such use, notified of or assessed an Administrative Fee, via a violation invoice, greater than $100 per violation invoice to recover the cost of the unpaid tolls, and who suffered financial injury by having to pay sums to the NTTA.

> 2. Each and every individual who, at any time from 2008 to present used an NTTA tollway and who was, as a result of nonpayment of charges incurred based upon such use, notified or assessed an Administrative Fee, via a violation invoice, that calculated such fee per individual toll transaction listed on the invoice rather than the administrative costs of recovery, and who suffered financial injury as a result.

> Excluded from the class are all employees, including, but not limited to, Judges, clerks and court staff and personnel of the Dallas County Courts, the Dallas Court of Appeals and the Texas Supreme Court; their spouses and any minor children living in their households and other persons within a third degree of relationship to any such State District Court Judge; and finally, the entire jury venire called to for jury service in relation to this lawsuit.

52.     The requirements of Fed. R. Civ. P. 23 are met in this case. The Class consists of thousands of tollway users who have been charged excessive Administrative Fees by the NTTA over the course of the last three years.   As defined, the class is so numerous that joinder of all members is impracticable.

53.     There are questions of fact and law common to the Class as defined, which common questions predominate over any questions affecting only individual members. The common questions include:

   a.   whether Defendants had statutory authority to charge the administrative fees for nonpayment in excess of $100;

   b.   whether the administrative fees charged by Defendants were constitutionally excessive;

   c.   whether the administrative fees charges were charged differently as to plaintiffs resulting in unequal treatment under the law;

   d.   whether damages incurred  by Plaintiff resulted in takings that violated Plaintiffs due process rights under both the Federal and State constitutions; and

   e.   whether the administrative fees charged by Defendants violated the statutory limitation that such fees be for the purpose of recovering the costs of collecting unpaid tolls.

54.     Plaintiffs can and will fairly and adequately represent and protect the interests of the Class as defined and have no interests that conflict with the interests of the Class.

This is so because:

   a.   All of the questions of law and fact regarding the liability of the Defendants are common to the class and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs will necessarily establish the liability of the Defendants to all class members. This is further true given the request for injunctive relief, which would protect the further violation of Plaintiffs' constitutional rights.

   b.   Without the representation provided by Plaintiffs, it is unlikely that any class members would receive legal representation to obtain the remedies due to them.  The Defendants misdeeds have gone unpunished despite outcry by the press, a State legislator, and countless members of the public.;

   c.   Plaintiff has retained competent attorneys who are experienced in the conduct of class actions. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the class members and are determined to diligently discharge those duties to obtain the best possible recovery for the Class.

Defendants' actions have affected numerous consumers in the same way. By the very nature of the NTTA, and given that its Board of Directors has explicitly voted to continue its unlawful fee practice, consumers will continue to be so affected.  This is also clearly, as represented by the interests of thousands, the press, and legislators, an issue that affects thousands of persons.  The class action is superior to any other method for remedying Defendants' actions given that common questions of fact and law predominate.  Class treatment is likewise indicated to ensure optimal compensation for the Class and limiting the expense and judicial resources associated with thousands of potential claims.

**VII.**
**CAUSES OF ACTION**

**COUNT 1 – DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS PURSUANT TO THE UNITED STATES CONSTITUTION (Violation of 42 U.S.C. 1983).**

55.     Plaintiffs incorporate by reference each proceeding and succeeding paragraph as though set forth fully at length herein.

56.     The NTTA is an entity of statutory creation, existing only under color of law.

57.     The NTTA's strictly enumerated powers control its existence and fix the sum that may be charged as an administrative fee.  An unsanctioned increase in the administrative fees usurps the legislative function and violates the core principles of due process.

58.     The right to enjoy property, including money, without unlawful deprivation is a personal right protected by 42 U.S.C. §1983.  Here, as previously pleaded, the Defendants unlawfully deprived the Plaintiffs and Class of their money through the imposition of unlawful administrative fees.  Such practice of the NTTA, which was and is routine and customary, constitutes an unauthorized and intentional deprivation of property and rights as secured by the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States of

America.  Section 1983 extends protection to all rights guaranteed by the Fourteenth Amendment of the United States Constitution.

59.     The Defendants establishment and collection of the "administrative fees" in excess of that allowed by Section 366.178 of the Texas Transportation Code was undertaken under color of State law and constituted/constitutes deliberate indifference to the Plaintiffs and Class' rights secured by the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States of America.  Such deprivation was the proximate cause of damages to the Plaintiffs and the Class.

60.     As previously pleaded, each governmental official defendant, through their own individual actions violated the Constitution by their explicit involvement in the adoption, maintenance, and enforcement of the excessive and unconstitutional "Administrative Fees." The individual defendants were well aware of the fact that they were violating Tex. Transp. Code. §366.178 and were each enmeshed in the workings, implementation, continuation, and enforcement of their excessive administrative fees.  Moreover, the individual Defendants were certainly apprised, by the press, by customer complaints, even by a State Senator, of the wrongfulness of their acts.  Regardless, in clear and apparent contravention of statute, and for the purposes of revenue not cost, the individual defendants proceeded to act in violation of the State and Federal Constitution.

61.     Plaintiffs Reyes, Covert and Lewis, and members of the 1st Class, were injured as a result of incurring the excessive administrative fees without the required due process of law. Those Plaintiffs were forced to pay monetary sums to the NTTA.  Plaintiffs request both monetary damages and injunctive relief.  Such relief would include not only stopping the NTTA's policy of charging administrative fees per transaction as opposed to per invoice, but

also a monthly accounting to ensure that only administrative "costs" were being charged.  In addition, Plaintiffs assert that Defendants by ordered to make restitution for their unjust enrichment.

## COUNT 2 – DENIAL OF EQUAL PROTECTION OF THE LAWS AS GUARANTEED BY THE UNITED STATES CONSTITUTION (Violation of 42 U.S.C. 1983)

62.     Plaintiffs incorporate by reference each proceeding and succeeding paragraph as though set forth fully at length herein.

63.     The NTTA is an entity of statutory creation, existing only under color of law.

64.     The Defendants establishment and collection of administrative fees in excess of those allowed by Section 366.178 of the Texas Transportation Code was undertaken under color of State law and deprived the Plaintiffs and the Class of their rights secured by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States of America.

65.     Texas law specifically provides that the NTTA may only charge an administrative fee to recover the cost of collecting an unpaid toll.  Tex. Transp. Code. §366.178.  The cost of collection is directly tied to the cost of sending out an invoice and Violation Invoice.  However, the plaintiffs are treated and assessed differently based on the number of transactions on each invoice rather than the actual cost of collection.

66.     The acts of the Defendants in charging and collecting from all Plaintiffs different sums despite the same costs per invoice, deprives the Plaintiffs and the 1st and 2nd Class of equal treatment and protection as due by law. Section 1983 extends protection to all rights guaranteed by the Fourteenth Amendment of the United States Constitution.

67.     As previously pleaded, each governmental official defendant, through their own individual actions violated the Constitution by their explicit involvement in the adoption,

maintenance, and enforcement of the excessive and unconstitutional "Administrative Fees." The individual defendants were well aware of the fact that they were violating Tex. Transp. Code. §366.178 and were each enmeshed in the workings, implementation, continuation, and enforcement of their excessive administrative fees.  Moreover, the individual Defendants were certainly apprised, by the press, by customer complaints, even by a State Senator, of the unconstitutionality of their acts.  Regardless, in clear and apparent contravention of statute, and for the purposes of revenue not cost, the individual defendants proceeded to act in violation of the State and Federal Constitution.

68.     Plaintiffs and the members of the 1st and 2nd class were injured as a result of incurring the excessive administrative fees without the required due process of law.  Plaintiffs request both monetary damages and injunctive relief.   Such relief would include not only stopping the NTTA's policy of charging administrative fees per transaction as opposed to per invoice, but also a monthly accounting to ensure that only administrative "costs" were being charged. In addition, Plaintiffs assert that Defendants by ordered to make restitution for their unjust enrichment.

## COUNT 3 – IMPOSITION OF EXCESSIVE FINES AS PROHIBITED BY THE UNITED STATES CONSTITUTION (Violation of 42 U.S.C. 1983)

69.     Plaintiffs incorporate by reference each proceeding and succeeding paragraph as though set forth fully at length herein.

70.     The NTTA is an entity of statutory creation, existing only under color of law.

71.     The Defendants establishment and collection of administrative fees in excess of those allowed by Section 366.178 of the Texas Transportation Code was undertaken under color of State law and deprived the Plaintiffs and the 1st and 2nd Class of their rights secured by the

Excessive Fines Clause of the Eighth Amendment to the Constitution of the United States of America.

72.     The Defendants establishment and collection of administrative fees in excess of those allowed by Section 366.178 of the Texas Transportation Code was undertaken under color of State law and constituted deliberate indifference to Plaintiffs and the Class's rights secured by the Excessive Fines Clause of the Eighth Amendment to the Constitution of the United States of America, as applied to through the Fourteenth Amendment of the Constitution of the United States of America.

73.     Texas law specifically sets out what constitutes an excessive fine and holds that administrative costs may not exceed $100.   However, the Defendants have demanded and collected sums grossly disproportionate to the fines assessed for nonpayment and the costs incurred by the NTTA.

74.     As previously pleaded, each governmental official defendant, through their own individual actions violated the Constitution by their explicit involvement in the adoption, maintenance, and enforcement of the excessive and unconstitutional "Administrative Fees." The individual defendants were well aware of the fact that they were violating Tex. Transp. Code. §366.178 and were each enmeshed in the workings, implementation, continuation, and enforcement of their excessive administrative fees.   Moreover, the individual Defendants were certainly apprised, by the press, by customer complaints, even by a State Senator, of the unconstitutionality of their acts.   Regardless, in clear and apparent contravention of statute, and for the purposes of revenue not cost, the individual defendants proceeded to act in violation of the State and Federal Constitution.

75.     Plaintiffs and the members of the 1st and 2nd class were injured as a result of incurring the excessive administrative fees without the required due process of law.  Plaintiffs request both monetary damages and injunctive relief.   Such relief would include not only stopping the NTTA's policy of charging administrative fees per transaction as opposed to per invoice, but also a monthly accounting to ensure that only administrative "costs" were being charged. In addition, Plaintiffs assert that Defendants by ordered to make restitution for their unjust enrichment.

## COUNT 4 – VIOLATION OF ARTICLE 1 SECTIONS 17 & 19
## OF THE TEXAS CONSTITUTION

76.     Plaintiffs incorporate by reference each proceeding and succeeding paragraph as though set forth fully at length herein.

77.     The NTTA is an entity of statutory creation, existing only under color of law.

78.     The NTTA's strictly enumerated powers control its existence and fix the sum that may be charged as an administrative fee.  An unsanctioned increase in the administrative fees usurps the legislative function and violates the core principles of due process.

79.     The right to enjoy property, including money, without unlawful deprivation is a personal right protected by Articles 17 and 19 of the Texas Constitution.  Here, as previously pleaded, the Defendants unlawfully deprived Plaintiffs Reyes, Covert and Lewis and members of the 1st Class of their money through the imposition of unlawful administrative fees.  Such practice of the NTTA, which was and is routine and customary, constitutes an unauthorized and intentional deprivation of property.

80.     Furthermore, because there was no statutory authority allowing for the imposition of an excessive administrative fee above $100, Defendants violated the Texas Constitution by taking Plaintiffs' property without due process of law.

81.     As previously pleaded, each governmental official defendant, through their own individual actions violated the Constitution by their explicit involvement in the adoption, maintenance, and enforcement of the excessive and unconstitutional "Administrative Fees." The individual defendants were well aware of the fact that they were violating Tex. Transp. Code. §366.178 and were each enmeshed in the workings, implementation, continuation, and enforcement of their excessive administrative fees.  Moreover, the individual Defendants were certainly apprised, by the press, by customer complaints, even by a State Senator, of the unconstitutionality of their acts.  Regardless, in clear and apparent contravention of statute, and for the purposes of revenue not cost, the individual defendants proceeded to act in violation of the State and Federal Constitution.

82.     The aforementioned Plaintiffs and class members request injunctive relief. Such relief would include not only stopping the NTTA's policy of charging administrative fees per transaction as opposed to per invoice, but also a monthly accounting to ensure that only administrative "costs" were being charged.

## COUNT 5 – EQUAL PROTECTION VIOLATIONS PURSUANT TO THE TEXAS CONSTITUTION

83.     Plaintiffs incorporate by reference each proceeding and succeeding paragraph as though set forth fully at length herein.

84.     The NTTA is an entity of statutory creation, existing only under color of law.

85.     The acts of the Defendants in charging and collecting from Plaintiffs and members of the 1st and 2nd class different amounts despite the same costs per invoice deprives the Plaintiffs and class of equal treatment and protection as due by the Texas Constitution. Article I, Section 3 provides that all free men have equal rights and that no man, or set of men, is entitled to exclusive separate public emoluments, or privileges.

86.     As previously pleaded, each governmental official defendant, through their own individual actions violated the Constitution by their explicit involvement in the adoption, maintenance, and enforcement of the excessive and unconstitutional "Administrative Fees."  The individual defendants were well aware of the fact that they were violating Tex. Transp. Code. §366.178 and were each enmeshed in the workings, implementation, continuation, and enforcement of their excessive administrative fees.  Moreover, the individual Defendants were certainly apprised, by the press, by customer complaints, even by a State Senator, of the unconstitutionality of their acts.  Regardless, in clear and apparent contravention of statute, and for the purposes of revenue not cost, the individual defendants proceeded to act in violation of the State and Federal Constitution.

87.     The Plaintiffs and members of the 1st and 2nd class were injured as a result of incurring the excessive administrative fees without the required due process of law.  Plaintiffs and members of the 1st and 2nd class request injunctive relief.  Such relief would include not only stopping the NTTA's policy of charging administrative fees per transaction as opposed to per invoice, but also a monthly accounting to ensure that only administrative "costs" were being charged.

## COUNT 6 – IMPOSITION OF EXCESSIVE FINES AS PROHIBITED BY THE TEXAS CONSTITUTION

88.     Plaintiffs incorporate by reference each proceeding and succeeding paragraph as though set forth fully at length herein.

89.     The NTTA is an entity of statutory creation, existing only under color of law.

90.     Texas law specifically sets out what constitutes an excessive fine and holds that administrative costs may not exceed $100.  However, the Defendants have demanded and

collected sums grossly disproportionate to the fines assessed for nonpayment and the costs incurred by the NTTA.

91.     The acts of the Defendants constituted and constitute violations of Article 1, Section 13 of the Texas Constitution prohibiting excessive fines.

92.     As previously pleaded, each governmental official defendant, through their own individual actions violated the Constitution by their explicit involvement in the adoption, maintenance, and enforcement of the excessive and unconstitutional "Administrative Fees."  The individual defendants were well aware of the fact that they were violating Tex. Transp. Code. §366.178 and were each enmeshed in the workings, implementation, continuation, and enforcement of their excessive administrative fees.  Moreover, the individual Defendants were certainly apprised, by the press, by customer complaints, even by a State Senator, of the unconstitutionality of their acts.  Regardless, in clear and apparent contravention of statute, and for the purposes of revenue not cost, the individual defendants proceeded to act in violation of the State and Federal Constitution.

93.     Plaintiffs and the members of the 1st and 2nd class were injured as a result of incurring the excessive administrative fees without the required due process of law.  Plaintiffs and members of the 1st and 2nd class request injunctive relief.  Such relief would include not only stopping the NTTA's policy of charging administrative fees per transaction as opposed to per invoice, but also a monthly accounting to ensure that only administrative "costs" were being charged.

# VIII
## PRAYER

WHEREFORE, Plaintiff demands judgment on his behalf and on behalf of the other members of the Class to the following effect:

    a.    declaring that this action may be maintained as a class action;

    b.    granting judgment in favor of Plaintiff and the other members of the Class against the Defendants;

    c.    all monetary relief allowed under 42 U.S.C. § 1983;

    d.    a refund of all administrative fees impermissibly collected;

    d.    injunctive relief preventing Defendants from further charging the excessive administrative fee and enforcing a regular accounting on the NTTA.

    e.    Attorneys' fees and Court costs, and

    f.    such other relief as the Court deems appropriate.

Respectfully submitted,

**THE COREA FIRM, PLLC**

/s/Thomas M. Corea
**Thomas M. Corea**
Texas Bar No. 24037906
**The Renaissance Tower**
1201 Elm Street, Suite 4150
Dallas, Texas 75201
Telephone: 214.953.3900
Facsimile: 214.953.3901

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

On January 12, 2011, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that a true and correct copy of this document has been served on all counsel of record via electronic mail or by other manner authorized by Federal Rule of Civil Procedure 5(b)(2).

 /s/ Thomas M. Corea
Thomas M. Corea