UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MIRNA REYES, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:10-CV-0868-G |
| NORTH TEXAS TOLLWAY | ) | |
| AUTHORITY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motions filed by the defendants, North Texas Tollway Authority ("NTTA"), Paul Wageman ("Wageman"), Allen Clemson ("Clemson"), Janice Davis ("Davis"), Kiven Williams (Williams"), Victor Vandergriff ("Vandergriff"), and Clayton Howe ("Howe") (collectively, the "defendants"), to dismiss the amended complaint filed by the plaintiffs, Mirna Reyes ("Reyes"), Emmanuel Lewis ("Lewis"), Jennifer Bunch ("Bunch"), and Brian Covert ("Covert") (collectively, the "plaintiffs") (docket entries 20, 21).  For the reasons set forth below, the defendants' motions to dismiss are granted in part and denied in part.

## I. BACKGROUND

### A. Factual Background

This case concerns the administrative fees charged by the NTTA to tollway users who fail to pay their toll invoices on time.  First Amended Complaint -- Class Action ("Complaint") ¶ 1 (docket entry 18).  The plaintiffs are drivers in North Texas who have used one of the NTTA's tollways.  See *id.* ¶¶ 37, 39, 43, 47.  They bring this suit individually and on behalf of a putative class of similarly situated individuals. *Id.* ¶¶ 51-54.  The defendants are the NTTA and some of its current or former directors or officers.  *Id.* ¶¶ 14-20.

The NTTA allows drivers to pay the toll for a tollway in one of three ways: (1) cash, (2) a TollTag, and (3) ZipCash.  *Id.* ¶ 25(a).  ZipCash is a video tolling system which uses cameras to take a picture of a car's license plate and charge the driver the toll.  *Id*; *see also* http://www.ntta.org/AboutUs/Projects/AllETC/ (last visited October 27, 2011).  If a driver does not pay the NTTA for the toll within 30 days, the NTTA will mail the driver a "ZipCash invoice" listing the tolls owed.  *Id.*  The cost of sending out the initial invoice is approximately $3.86.  *Id.* ¶25(b).  "The invoice may, and usually does, contain more than one transaction."[1]  *Id.*  If that initial invoice is not paid within 30 days, the NTTA will send the driver a "violation invoice."  *Id.* ¶ 25(c).  The cost of sending out a violation invoice is approximately

---

[1]     In this opinion, a transaction will refer to a single usage of a toll road.

$4.61.  *Id*.  In the violation invoice, the NTTA will assess the driver an

"administrative fee" for each toll transaction for which the driver has not paid the

toll.  *Id*. ¶ 25(d).  Initially, the NTTA assessed an administrative fee of $25.00 for

each transaction listed on a violation invoice.  *Id*.  However, the administrative fee

charged was lowered in 2010 to $8.33 per transaction.  *Id*.

The four named plaintiffs in this case used the ZipCash system, but failed to

pay their initial ZipCash invoices on time.  *Id*. ¶¶ 36-50.  As a result, they were

charged hundreds or thousands of dollars in administrative fees by the NTTA.  *Id*.

They allege that the NTTA's assessment of an administrative fee per transaction

(rather than per violation invoice) at either $25.00 or $8.33 per transaction violates

TEXAS TRANSPORTATION CODE § 366.178, which governs situations where drivers fail

or refuse to pay their tolls.  *See generally* Complaint ¶¶ 59, 72, 81, 92.[2]  As a result, the

plaintiffs allege, their federal constitutional rights under the Due Process Clause of

the Fourteenth Amendment and the Excessive Fines Clause of the Eighth

Amendment, and their state constitutional rights under Sections 13, 17, and 19 of

Article 1 of the Texas Constitution, were violated.  *Id*. ¶¶ 55-61, 69-82, 88-93.

---

[2]    Plaintiffs' complaint alleges violations of the Equal Protection Clause of
the Fourteenth Amendment to the U.S. Constitution, and equal protection under
Article 1, Section 3 of the Texas Constitution.  Complaint ¶¶ 66, 85.  However, the
plaintiffs elected not to contest the defendants' motion to dismiss those claims.
Plaintiffs' Response to Defendants' Motions to Dismiss First Amended Complaint
and Brief in Support ("Plaintiffs' Response") at 1 n.1 (docket entry 22).  Therefore,
without objection, the defendants' motion to dismiss these two claims is granted.

Reyes used the ZipCash method to pay tolls between May 2008 and August 2009.  *Id.* ¶ 37.  She received Zipcash invoices from the NTTA on a monthly basis, consistent with the NTTA's stated policy.  *Id.*  "When Ms. Reyes inadvertently failed to pay the invoices in a timely manner, Defendants assessed an administrative fee for each and every time she used ZipCash."  *Id.*  Reyes claims that she was charged more than $3,000.00 in administrative fees, and that she eventually paid the NTTA $950.00 for her failure to pay her violation invoices.  *Id.*

Bunch also used the ZipCash method to pay tolls that she incurred between November 2007 and mid-year 2009.  *Id*. ¶ 39.  "Ms. Bunch failed to pay the [ZipCash] invoices in a timely manner."  *Id.*  In December of 2009, Bunch received a violation invoice listing fourteen transactions between May 2009 and September 2009 totaling $19.58.  *Id.* ¶ 40.  Despite the transactions being listed on one invoice, the NTTA assessed $350 in administrative fees against her -- a $25 administrative fee for each transaction.  *Id.* ¶ 40.  In January of 2010, Bunch paid the fines in full.  *Id.* ¶ 41.

Covert received a ZipCash invoice from the NTTA in December of 2009 identifying fifteen transactions between September 19, 2009 and October 23, 2009.  *Id.* ¶ 43.  "Covert failed to pay the NTTA invoices in a timely manner."  *Id.*  In February of 2010, Covert received a violation invoice from the NTTA listing the same fifteen transactions, amounting to collective tolls of $28.16 but requiring $550 in

administrative fees.  *Id.* ¶ 44.  Covert ultimately paid the NTTA $250.00 and purchased a TollTag.  *Id*. ¶ 45.

Lewis received a violation invoice from the NTTA in November of 2009.  *Id.* ¶ 48.  The violation invoice listed tolls totaling $46.91 but required him to pay $1,546.91 in administrative fees.  *Id.*  Lewis was eventually billed "$10,000.00 in charges for approximately $300."  *Id.* ¶ 49.  The NTTA sent the matter to collections, which Lewis alleges damaged his credit.  *Id.*

The plaintiffs bring this action on behalf of themselves and all other individuals similarly situated, as part of a class action under FEDERAL RULE OF CIVIL PROCEDURE 23(b)(2) and 23(b)(3).  *Id.* ¶ 51.  The plaintiffs have divided the class into two subclasses.  *Id.*  Class One consists of any individual who, since 2008, *paid* an administrative fee over $100.00 per NTTA tollway violation invoice, and "suffered financial injury by having to pay [the] sums to the NTTA".  *Id.*  Class Two consists of every individual who *incurred* an administrative fee on an NTTA tollway violation invoice that was calculated "per individual toll transaction listed on the invoice rather than the administrative costs of recovery," and "suffered financial injury as a result." *Id.*

The plaintiffs have sued the NTTA and a number of its board of directors and senior executives in their individual and official capacities.  Particularly, the plaintiffs name as defendants:  (1) Wageman, who was the chairman of the NTTA's board of

directors from 2006 through September of 2010; (2) Vandergriff, who was vice

chairman from 2007 until he succeeded Wageman as chairman in October of 2010;

(3) Clemson, the NTTA's executive director; (4) Davis, its chief financial officer;

(5) Williams, its director of toll collections; and (6) Howe, its assistant director of

operations.  *Id.* ¶¶ 15-20.

The defendants now move to dismiss under Federal Rule of Civil Procedure

12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a

claim for which relief may be granted.  *See generally* Defendants' Motion to Dismiss

First Amended Complaint and Brief in Support Thereof ("Defendants' Motion")

(docket entry 20).  The individual defendants also argue that they are immune from

the plaintiffs' suit.  Defendants Paul Wageman, Allen Clemson, Janice Davis, Kiven

Williams, Victor Vandergriff, and Clayton Howe's Motion to Dismiss First Amended

Complaint and Brief in Support Thereof ("Individual Defendants' Motion") (docket

entry 21).

## B.  Statutory Background

The NTTA is governed by Chapter 366 of the TEXAS TRANSPORTATION CODE.

The purposes of Chapter 366 are "the creation of regional tollway authorities to

secure and acquire rights-of-way for urgently needed transportation systems and to

plan, design, construct, operate, expand, extend, and modify those systems."  *Id*.

§ 366.002(a)(2).  Chapter 366 "shall be liberally construed to effect its purposes."  *Id.*

§ 366.002(b).  Moreover, regional tollway authorities like the NTTA have the power to "do all things necessary or appropriate to carry out the powers expressly granted by this chapter." *Id.* § 366.033(a)(14).

TEXAS TRANSPORTATION CODE § 366.178(a) requires "[a] motor vehicle . . . that passes through a toll collection facility . . . [to] pay the proper toll." *Id.* Subsections 366.178(b)-(d) control the fines and administrative fees that the NTTA can impose on drivers who fail to pay the proper toll:

> (b)  A person who fails or refuses to pay a toll provided for the use of a project is liable for a fine not to exceed $250, plus an administrative fee incurred in connection with the violation.

> (c)  If a person fails to pay the proper toll:

>> (1) on issuance of a notice of nonpayment, the registered owner of the nonpaying vehicle shall pay both the proper toll and the administrative fee; and

>> (2) an authority may charge an administrative fee of not more than $100 to recover the cost of collecting the unpaid toll.

> (d)  Notice of nonpayment under Subsection (c)(1) shall be sent by first-class mail and may not require payment of the proper toll and the administrative fee before the 30th day after the date the notice is mailed.  The registered owner shall pay a separate toll and administrative fee for each nonpayment.

Since this case was filed, the Texas Legislature has amended Section 366.178. Act of May 27, 2011, 82nd Leg., R.S., ch. 1216, §§ 1-4, 2011 Tex. Sess. Law Serv.

3247-49 (Vernon) ("S.B. 469").  S.B. 469 has no effect on tolls assessed prior to September 1, 2011.  *Id.* §3, 2011 Tex. Sess. Law. Serv. at 3249.  Therefore, the amendments themselves have no direct effect on this case.  However, S.B. 469 is helpful in interpreting the pre-amendment version of Section 366.178.

S.B. 469 changed the NTTA's power to collect administrative fees from drivers who do not timely pay their ZipCash invoices.  Under Section 366.178(c) (as amended), the NTTA "may charge only one administrative fee of not more than $25 for the first notice of nonpayment that is sent to the registered owner of the nonpaying vehicle."  If the driver fails to pay the first notice of non-payment, then the NTTA will send the driver a second notice of non-payment.  *Id.* § 366.178(d-1) (amended).  In this second notice, the NTTA is permitted to impose, in addition to the amount included in the first notice of nonpayment, "an additional administrative fee of not more than $25 for each unpaid toll included in the notice, not to exceed a total of $200."  *Id.* § 366.178(d-1)(1)-(2) (amended).  If the NTTA has to send out a third notice of non-payment, then it can impose, in addition to the amount included on the second notice of nonpayment, "any third-party collection service fees incurred by the authority."  *Id.* § 366.178(d-2)(2) (amended).  Moreover, unlike the pre-S.B. 469 version of Section 366.178, the statute does not expressly tie the administrative fees "to recover the cost of collecting the unpaid toll."  *See* Plaintiffs' Brief Concerning

the Recent Amendments to Texas Transportation Code § 366.178 ("Plaintiffs' S.B.

469 Brief") at 1-2 (docket entry 30).

## II.  ANALYSIS

### A.  Rule 12(b)(1):  Lack of Subject Matter Jurisdiction

The defendants have moved to dismiss this cause of action for lack of subject

matter jurisdiction under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1).  Defendants'

Motion at 4.  Specifically, the defendants argue that the plaintiffs lack standing to

bring this lawsuit.  *Id*.

#### 1.  *Legal Standard*

Article III of the United States Constitution limits federal courts' jurisdiction

to "cases" and "controversies."  U.S. CONST. Art. III, § 2.  Standing -- *i.e.*, the need to

demonstrate that the plaintiff has a direct, personal stake in the outcome of the suit --

is an "essential and unchanging part" of this case-or-controversy requirement.  *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

As the Supreme Court explained in *Lujan*, the "irreducible constitutional

minimum of standing" has three elements:

> First, the plaintiff[s] must have suffered an "injury in fact"
> -- an invasion of a legally protected interest which is
> (a) concrete and particularized, and (b) "actual or
> imminent, not 'conjectural' or 'hypothetical.'"  Second,
> there must be a causal connection between the injury and
> the conduct complained of - the injury has to be "fairly . . .
> trace[able] to the challenged action of the defendant, and
> not . . . th[e] result [of] the independent action of some

> third party not before the court."  Third, it must be
> "likely," as opposed to merely "speculative," that the injury
> will be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560 (internal citations and footnote omitted).

Lack of standing is a defect in subject matter jurisdiction.  See *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (citing *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986)); see also *Sommers Drug Stores Company Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("standing is essential to the exercise of jurisdiction, and . . . lack of standing can be raised at any time by a party or by the court") (citing *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1374 (5th Cir.1986), *cert. denied*, 481 U.S. 1014 (1987)).

Federal district courts have the unique power to make factual findings which are decisive of subject matter jurisdiction.  See *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.) (citing, among other authorities, *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)), *cert. denied*, 454 U.S. 897 (1981).  The district court has the power to dismiss for lack of subject matter jurisdiction -- and thus for lack of standing -- on any one of three separate bases:  "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413; *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997); see also *Haase*, 835 F.2d at 907 (noting that, to the extent

the assessment of a plaintiff's standing turns on factual evidence, a court may consider all matters developed in the record at the time of its decision).

Moreover, while the burden is on the party seeking to invoke the federal court's subject matter jurisdiction to establish the requisite standing requirements, that burden need be met only by a preponderance of the evidence.  See *Hartford Insurance Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).

### 2.  *Application*

In this case, the defendants argue that the plaintiffs lack standing because they have failed to allege an invasion of a legally protected interest, and thus have not fulfilled the "injury in fact" requirement.  Defendants' Motion at 5.  In support of their position, the defendants point to this court's decision in *Verrando v. ACS State and Local Solutions, Inc.*, No. 3:08-CV-2241-G, 2009 WL 2958370 (N.D. Tex. Sept. 15, 2009) (unpublished) (Fish, J.).  In *Verrando*, the plaintiffs were individuals who had received a notice of violation from the City of Dallas for running a red light. *Id*. at *1.  These plaintiffs then sued the company that had allegedly sold the red light cameras to the City of Dallas, arguing that the company was operating without a necessary state license.  *Id*.  This court found that the plaintiffs lacked standing to bring the suit, because the injury they suffered -- the civil fine paid -- was not a "legally protected right."  *Id.* at *3.

- 11 -

However, the facts in *Verrando* are distinguishable from the facts in this case. Unlike the plaintiffs in *Verrando*, the plaintiffs in this case do not dispute the need to pay the toll, a fine for failure to pay the toll, or the imposition of a lawful administrative fee. Plaintiffs' Response at 4. Instead, the plaintiffs allege that the defendants have imposed "excessive" administrative fees that are in violation of their federal and state constitutional rights. *Id.* An allegation of an excessive administrative fee imposed on a given driver is an allegation of an actual, concrete, and particularized harm. Thus the plaintiffs have fulfilled the "injury in fact" requirement of *Lujan*.

The defendants also argue that plaintiff Lewis and the Class Two plaintiffs fail to sufficiently allege that they have suffered an "injury in fact." Defendants' Motion at 7. Unlike the other named plaintiffs and the Class One plaintiffs, Lewis and the Class Two plaintiffs have been billed the administrative fees on their violation invoices, but they have not yet paid them. *Id*. Nevertheless, the plaintiffs' complaint presents enough facts to allege injuries to Lewis and the Class Two plaintiffs that are sufficiently "concrete and particularized" and "actual and imminent." See *Lujan*, 504 U.S. at 560.

While Lewis may have not yet paid out any money to the NTTA, the complaint alleges sufficient facts to show "injury in fact." The complaint alleges that Lewis received a violation invoice which quoted an administrative fee of $1546.91,

which was later raised to over $4400.  *See* Complaint ¶ 48.  The complaint also

alleges that NTTA "sent the matter to collections," and that he has "suffered damage

to his credit."  *Id*. ¶ 49.  These are not "conjectural or hypothetical" allegations of a

potential invasion; these are real measures taken by the NTTA to directly collect from

Lewis an administrative fee that the plaintiffs allege is unconstitutional.

Likewise, the complaint's allegations with respect to the Class Two plaintiffs

are sufficient to fulfill the "injury in fact" requirement.  This is because the Class Two

plaintiffs are defined as those who "used an NTTA tollway and who [were] . . .

notified or assessed an Administrative Fee, via a violation invoice."  Complaint ¶ 51.

Thus the individuals who fit within Class Two are not people who might be assessed

an allegedly excessive administrative fee; these are individuals who have already

received their violation invoices and have been assessed the administrative fee in

question.  This distinguishes the Class Two plaintiffs from individuals who are subject

only to the "the possibility of future harm" or a "general threat of prosecution."  *See*

Defendants' Reply Brief in Support of Motion to Dismiss ("Defendants' Reply") at 4

(docket entry 23).  The defendants' motion to dismiss for lack of jurisdiction is

denied.

## B.  Rule 12(b)(6): Failure to State a Claim
## Upon Which Relief Can Be Granted

The defendants have moved to dismiss the plaintiffs' claims in this case under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) for "failure to state a claim for which relief can be granted."  Defendants' Motion at 8.

### 1.  *Legal Standard*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations, quotations marks, and brackets omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Id*. (quoting *Martin K. Eby Construction Company, Inc.*

- 14 -

*v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6).  See *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009).  The court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  129 S.Ct. at 1950.  The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief."  *Id.*  The plausibility principle does not convert Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 1949.  The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]" -- 'that the pleader is entitled to relief.'"  *Id.* at 1950 (quoting FED. R. CIV. P. 8(a)(2)).  The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" its claims against the defendant "across the line from conceivable to plausible."  See *id.* at 1950, 1952.

### 2. *Application*

In their complaint, the plaintiffs allege that the defendants have violated their federal constitutional rights under the Due Process Clause of the Fourteenth Amendment, as well as the Excessive Fines Clause of the Eighth Amendment as incorporated against the states through the Fourteenth Amendment.  Complaint ¶¶ 55-61, 69-75.  The plaintiffs seek relief for these alleged constitutional violations under 42 U.S.C. § 1983.  *Id*.  The plaintiffs also allege that the defendants violated their Texas state constitutional rights to enjoy property without unlawful deprivation under Sections 17 and 19 of Article 1, and the prohibition on excessive fines under Section 13 of Article 1.  *Id*. ¶¶ 76-82, 88-93.

### a.  The Plaintiffs' Arguments

The plaintiffs' claims are based on the proposition that the NTTA violated Texas statutory law when it assessed the administrative fees.  The plaintiffs have offered two principal arguments as to why the NTTA violated Section 366.178.  First, they argue that the NTTA's policy of assessing an administrative fee based upon each transaction, instead of upon each invoice sent out, is a violation of the express terms of Section 366.178.  Second, they argue that the administrative fees that the NTTA has imposed on drivers violate the statutory requirement that the fees are charged "to recover the cost of collecting the unpaid toll."  *See* TEXAS TRANSPORTATION CODE § 366.178(c).

- 16 -

i.  Assessing the administrative fee on a per transaction,
rather than per invoice, basis

The plaintiffs argue that the NTTA's policy of assessing an administrative fee based upon each transaction is in violation of Section 366.178.  Complaint ¶ 2.

However, a careful reading of Section 366.178 shows that the NTTA's per transaction policy is correct.  By its terms, Section 366.178 addresses only a failure to pay a toll, not an invoice.  Section 366.178(b) states that a person who fails to pay "*a toll*" is liable for a fine and an administrative fee "incurred in connection with the violation."  (emphasis added).  And Section 366.178(c) states that the NTTA can charge an administrative fee "to recover the cost of collecting *the unpaid toll*." (emphasis added).  In addition, Section 366.178(d) suggests that the NTTA's interpretation regarding the imposition of administrative fees is required by the statute.  This subsection states that "[t]he registered owner shall pay a *separate* toll and administrative fee for *each* nonpayment."  TEXAS TRANSPORTATION CODE § 366.178(d) (emphasis added).  That is, each failure to pay a separate toll is a single instance of nonpayment, and each instance of nonpayment requires its own separate administrative fee.  Therefore, an administrative fee is imposed for each toll.

Furthermore, the Texas Legislature's amendments to Section 366.178 demonstrate that the NTTA properly interpreted the statute in developing its administrative fee policy.  As the defendants note, "[w]hen the legislature amends a law, it is presumed that it intends to change the law."  Defendants' Brief Regarding

- 17 -

Effect of Senate Bill 469 ("Defendants' S.B. 469 Brief") at 5 (docket entry 29) (quoting *Schott v. Leissner*, 659 S.W.2d 752, 754 (Tex. App.--Corpus Christi 1983), *writ ref'd n.r.e.*, 668 S.W.2d 686 (Tex. 1984) (per curiam)).  The fact that the legislature changed the statute to one that imposes per-invoice (as well as per-toll) administrative fees suggests that pre-S.B. 469 Section 366.178 only dealt with per-toll fees.  Moreover, in amending Section 366.178, the Senate expressly stated that the NTTA's interpretation of the original text was correct.

> *Currently, [the] statute authorizes the North Texas Tollway Authority to assess an administrative fee of up to $100 per toll transaction and a subsequent fine of $250 per transaction for late payments*.  With advancements in electronic tolling, using toll roads has become more convenient for residents, and an average invoice contains twelve transactions; however, because bills arrive in the mail days or weeks after a toll road trip, drivers sometimes unknowingly miss a payment. Violators should be held accountable, but the current penalty structure allows fines and fees to accumulate to the point that drivers are unable to afford them; an average invoice could cost a driver thousands of dollars for missing a payment.
>
> [S.B. 469] reduces the initial fee from $100 to $25 *and makes the fee applicable to a monthly invoice instead of per transaction*.  The bill also makes the subsequent fine of $250 applicable to a monthly invoice instead of per transaction.

Senate Committee on Transportation and Homeland Security, Bill Analysis, Texas S.B. 469, 82nd Legislature, R.S. (2011) (emphases added).

ii.  Administrative fees and the cost of collecting the toll

The plaintiffs also argue that the defendants' administrative fee policy violates Section 366.178(c)'s requirement that the administrative fee be charged "to recover the cost of collecting the unpaid toll."  The plaintiffs' complaint alleges that it costs the NTTA $3.86 to send out a ZipCash invoice, and $4.61 to send out a violation invoice.  Complaint ¶ 25.  However, the complaint alleges that the plaintiffs were charged hundreds or even thousands of dollars in administrative fees.  *Id.* ¶¶ 37, 41, 44, 48; see also *id.* ¶ 2 ("[W]hile the true administrative cost of the unpaid tolls on one violation invoice are less than $10 and at the very least are of a fixed amount as determined by the invoice that they are collectively sent out on, the NTTA regularly and customarily charges over $100 to recover the 'cost of an unpaid toll.'")

The defendants argue that the plaintiffs are wrong to "equate the alleged actual cost of mailing a single invoice with the cost of collecting the unpaid toll." Defendants' Motion at 11 n.49 ("Ignoring the facial fallacy of such a statement, it defies logic to suggest that the cost of collecting a single unpaid toll is equal to the cost of collecting, from the same individual, sixty unpaid tolls.").  Moreover, the defendants cite the Supreme Court's decision in *United States v. Sperry Corporation*, 493 U.S. 52, 60 (1989), where the Court stated that it "has never held that the amount of a user fee must be precisely calibrated to the use that a party makes of Government services."  See Defendants' Motion at 14.  Instead, the Supreme Court

- 19 -

has required that a user fee only must be a "fair approximation of the cost of benefits supplied." *Id.* at 14-15.  Finally, the defendants emphasize that the NTTA has the power to "do all things necessary and appropriate to carry out the powers expressly granted to it," TEXAS TRANSPORTATION CODE § 366.033(a)(14), and that the statute "shall be liberally construed to effect its purposes," *id.* § 366.002(b).  *See* Defendants' Motion at 11 & n.46.

Nevertheless, the difference between the plaintiffs' allegations of the NTTA's administrative costs, and the administrative fees imposed on certain drivers, appears to be vast.  Because the issue arises in the context of a motion to dismiss, the court cannot make any factual determinations about whether the fees were appropriate to recover the cost of collecting the unpaid toll.  Consequently, the court cannot determine, on this motion, whether NTTA's administrative fee practice did or did not violate Section 366.178(c).

           b.  <u>Due Process Clause of the Fourteenth
Amendment to the U.S. Constitution</u>

The Fourteenth Amendment to the U.S. Constitution prohibits states from depriving "any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  Under 42 U.S.C. § 1983, the plaintiffs can recover damages for a constitutional violation if they can prove that the defendants deprived them of a constitutional right or privilege while the defendants were acting under color of state law.

Under Texas law, money is considered property. *Canal Insurance Company v. Hopkins*, 238 S.W.3d 549, 568 (Tex. App.--Tyler 2007, pet. denied) (citing *Norris v. City of Waco*, 57 Tex. 635, 643 (Tex. 1882)).  As a result, the state cannot deprive a person of his money without due process. *Woodard v. Andrus*, 419 F.3d 348, 353-54 (5th Cir. 2005).

A violation of a state statute, however, is not necessarily a violation of a constitutional right.  *Woodard*, 419 F.3d at 353 ("[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights.").  It is also true, though, that a person acting under color of state law can violate a constitutional right by violating a particular state statute.  For example, in *Woodard*, 419 F.3d at 352-53, the Fifth Circuit found that a plaintiff had pled a successful due process claim under Section 1983 by alleging that a court clerk had charged and collected litigation fees that were in excess of those authorized by a state statute.

In this case, the plaintiffs have properly pled a Section 1983 claim for a violation of the Due Process Clause.  First, the plaintiffs have pled that "[t]he NTTA is an entity of statutory creation, existing only under color of [state] law."  Complaint ¶ 56.  Second, because money is considered property in Texas, they have pled that they were deprived of a property right.  *Id*. ¶ 60.  Finally, to the extent that the administrative fees imposed were more than Section 366.178 permitted, the plaintiffs

have pled that they were deprived of their property without due process of law.  *Id.*
¶ 59.

c.  Federal Excessive Fines Clause of the Eighth
Amendment to the U.S. Constitution

The Eighth Amendment to the U.S. Constitution prohibits the imposition of
"excessive fines."  U.S. CONST. amend. VIII.

There is a surprising amount of confusion as to whether the Excessive Fines
Clause has been incorporated against the states through the Due Process Clause of
the Fourteenth Amendment.  In a recent decision, the Court expressly stated that it
has "never decided whether . . . the Eighth Amendment's prohibition of excessive
fines applies to the States through the Due Process Clause."  See *McDonald v. City of
Chicago*, __ U.S. __, 130 S.Ct. 3020, 3035 n.13 (2010).  In support of this
proposition, Justice Alito cited *Browning-Ferris Industries of Vermont, Inc. v. Kelco
Disposal, Inc.*, 492 U.S. 257, 276 n.22 (1989) ("We shall not decide whether the
Eighth Amendment's prohibition on excessive fines applies to the several States
through the Fourteenth Amendment[.]").  In the past, the Fifth Circuit has also held
that the clause has not been incorporated against the states.  See *Broussard v. Parish of
Orleans*, 318 F.3d 644, 652 (5th Cir.) ("[T]he Supreme Court has never directly
applied the Excessive Fines Clause of the Eighth Amendment to the several states."),
*cert. denied*, 539 U.S. 915 (2003).

However, in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 433-34 (2001), Justice Stevens stated that the Fourteenth Amendment "makes the Eighth Amendment's prohibition against excessive fines and cruel and unusual punishment applicable to the States."  In the past, Justice Stevens has supported incorporating the Excessive Fines Clause against the states in dissent.  See *Browning-Ferris*, 492 U.S. at 284 ("I see no reason to distinguish one Clause of the Eighth Amendment from another for purposes of incorporation, and would hold that the Excessive Fines Clause also applies to the States.") (O'Connor and Stevens, JJ., concurring in part and dissenting in part).

Furthermore, the Fifth Circuit has cited *Cooper* and applied the Excessive Fines Clause against the states.  See *Watson v. Johnson Mobile Homes*, 284 F.3d 568, 572 (5th Cir. 2002) ("The imposition of punitive damages under state law is constrained by the Eighth and Fourteenth Amendments, the first proscribing excessive fines and cruel and unusual punishment, the second making grossly excessive punishments unlawful under its Due Process Clause.").  And there are appellate cases outside the Fifth Circuit that have applied the Excessive Fines Clause to state entities.  See, *e.g.*, *Wright v. Riveland*, 219 F.3d 905 (9th Cir. 2000).  In *Wright*, the Ninth Circuit simply assumes that the Excessive Fines Clause applies against a state agency.  219 F.3d at 915-19.

However, most commentators appear to believe that the Supreme Court has not expressly incorporated the Excessive Fines clause against the states through the Fourteenth Amendment.  For example, Rotunda and Nowak state that the Excessive Fines Clause has "not been the subject of litigation which would establish [its] application to the states."  RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW:  SUBSTANCE AND PROCEDURE, § 14.2(a) (2011). Nevertheless, they also state that "because the provision seems logically intertwined with the other provisions of that Amendment, it may already have been impliedly made applicable to the states."  *Id*.  Furthermore, Professor Chemerinsky states that "the Court has never ruled as to whether the prohibition of excessive fines in the Eighth Amendment is incorporated."  ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES 505 (3rd ed. 2006).

After considering the relevant precedent, this court concludes that the Excessive Fines Clause of the Eighth Amendment has not yet been incorporated against the states through the Due Process Clause of the Fourteenth Amendment. First, in the most recent case on the matter, the Supreme Court stated that the Clause had not been incorporated.  See *McDonald*, 130 S.Ct. at 3035 n.13.  Second, two of the most respected treatises on constitutional law state that it has not been incorporated.  *See* NOWAK AND ROTUNDA § 14.2(a); CHEMERINSKY at 505.  Finally, it is unlikely that the Excessive Fines Clause could have been incorporated as a result of

Justice Stevens' opinion in *Cooper Industries*. To support his position that the "Eighth Amendment's prohibition against excessive fines and cruel and unusual punishments applicable to the States," Justice Stevens cites *Furman v. Georgia*, 408 U.S. 238 (1972). However, *Furman* deals with whether the death penalty violates the Cruel and Unusual Punishment Clause; it only mentions the Excessive Fines Clause in passing. When considered against Justice O'Connor's dissenting opinion in *Browning-Ferris*, which Justice Stevens joined, it appears that the line in *Cooper Industries* was more wishful thinking than a statement of the law. As a result, this court concludes that the Excessive Fines Clause is not incorporated against the states, and so a state-created entity like the NTTA could not have violated it. Therefore, the plaintiffs' Section 1983 claim against the defendants for a violation of the Excessive Fines clause of the Eighth Amendment is dismissed.

### d. Texas Constitutional Claims

The plaintiffs also allege that the defendants violated their Texas state constitutional right to enjoy property without unlawful deprivation under Sections 17 and 19 of Article 1, and the prohibition on excessive fines under Section 13 of Article 1.

### i. Governmental Immunity for the NTTA

The NTTA argues that it is entitled to governmental immunity, which would bar the state law claims brought against it. Defendants' Motion at 19-20. The

NTTA is an authority created under chapter 366 of the TEXAS TRANSPORTATION CODE, which makes it "a body politic and corporate and a political subdivision of this state." *Id.* § 366.032(a). As a political subdivision of the state, the NTTA is entitled to governmental immunity. See *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 n.11 (Tex. 2006) (internal quotations omitted). Governmental immunity protects an entity from suit unless there has been a clear and unambiguous waiver of this immunity. *Id*. at 328-29. Moreover, a plaintiff who wishes to sue a governmental entity must plead and establish that the NTTA's immunity has been waived. *Texas Department of Transportation v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

In this case, the plaintiffs have not pled or established that the NTTA's governmental immunity has been waived. *See* Defendants' Motion at 20. Furthermore, the plaintiffs appear to have admitted as much in their response. *See* Plaintiffs' Response at 22. As a result, the plaintiffs' state constitutional claims again the NTTA are barred. The defendants' motion to dismiss these claims is granted.

### ii. State constitutional claims against individual NTTA directors and officers

While governmental immunity protects the NTTA from suit on the plaintiffs' state constitutional claims, "governmental immunity . . . does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368-69 (Tex. 2009). Because Texas does not recognize a private cause

of action for money damages for a violation of the Texas Constitution, see *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995), the plaintiffs only request injunctive relief for their state constitutional claims in their complaint. *See* Complaint ¶¶ 82, 93. First, the plaintiffs request that this court "stop[] the NTTA's policy of charging administrative fees per transaction as opposed to per invoice[.]" *Id*. Second, the plaintiffs request "a monthly accounting to ensure that only administrative 'costs' were being charged." *Id*.

However, even if the plaintiffs are able to prove that the defendants violated the plaintiffs rights under the state constitution, this court will not grant either of the two injunctions that the plaintiff has requested. First, this court will not stop the NTTA from charging administrative fees per transaction, instead of per invoice, because both the pre- and post-S.B. 469 versions of Section 366.178 permit (or require) the NTTA to do so. See *supra* section II.B.2.a.i. Second, this court will not grant a monthly accounting to ensure that only administrative costs are being charged, because post-S.B. 469 Section 366.178 demonstrates that the legislature did not intend to require the NTTA to tie its administrative fees to "costs." In S.B. 469, the Texas state legislature removed the requirement that administrative fees be used "to recover the cost of collecting the unpaid toll." This indicates that the legislature no longer wanted to limit the NTTA's discretion in setting administrative fees in this manner. Instead, the legislature chose to give the NTTA more latitude in setting the

administrative fees, as long as they were within the escalating fee scheme created by

S.B. 469.  See *supra* section I.B.  As a result, the plaintiffs state constitutional law

claims for injunctive relief against the directors and officers of the NTTA are

dismissed as moot.

### C.  Individual Defendants' Defenses

Along with the defenses offered by the NTTA, the individual defendants have

moved to dismiss on two additional grounds.  First, they argue that the plaintiffs have

failed to satisfy the pleading requirements under Federal Rule of Civil Procedure

8(a)(2) and 12(b)(6).  Individual Defendants' Motion at 4.  Second, they argue that

they are entitled to qualified immunity from all of the plaintiffs' claims.  *Id*. at 9.

### 1.  *Failure to satisfy pleading requirements under Rule 8(a)(2) and 12(b)(6)*

In order to support a cause of action, the plaintiffs must have stated a legally

cognizable claim under FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2) and 12(b)(6).

Under Rule 8(a)(2), a complaint must include "a short and plain statement of the

claim showing that the pleader is entitled to relief."  This standard "does not require

detailed factual allegations, but it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. 662, 129 S. Ct. at 1949.

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Id*.  In particular, the plaintiff must "plead

that each Government-official defendant, through the official's own individual

actions, has violated the Constitution." *Id*.

In this case, the plaintiffs' complaint has sufficiently pled the individual

defendants' participation in developing the allegedly unconstitutional administrative

fee scheme.  The complaint alleges that as members of the NTTA Board of Directors,

Wageman and Vandergriff specifically voted "[i]n March of 2010 . . . to continue

[NTTA's] administrative fee charging policy."  Complaint ¶¶ 27-28, 31.  The

complaint also alleges that Clemson and Davis, as Executive Directors of the NTTA,

had "financial oversight as well as the creation of financial policies for the NTTA."

*Id*. ¶ 32.  Furthermore, the complaint alleges that Williams, as Director for Toll

Collections, was responsible for "planning, organizing, supervising and directing the

operations of the Toll Collection Department."  *Id*. ¶ 34.  Finally, the complaint

alleges that Howe, as Assistant Executive Director of Operations for the NTTA,

"maintained supervisory authority over the Director of Toll Collection and value."  *Id*.

¶ 35.  These allegations support the plausible inference that each of the individual

defendants were instrumental in developing the administrative fee policy.  As a result,

the plaintiff's complaint has met the pleading requirements set forth in Rule 8(a)(2)

and 12(b)(6).

2.  *Qualified Immunity*

The individual defendants also argue that they are entitled to qualified immunity.  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (outlining the standard in a *Bivens* action); see also *Wilson v. Layne*, 526 U.S. 603, 609 (1999) ("Although this case involves suits under both § 1983 and *Bivens*, the qualified immunity analysis is identical under either cause of action.").  Once the defendants have raised this defense, the burden shifts to the plaintiffs to show that the individual defendants are not entitled to qualified immunity.  See *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2001) (en banc) ("When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."), *cert. denied*, 537 U.S. 1232 (2003).

To overcome a motion to dismiss based on qualified immunity, the plaintiffs must demonstrate two things.  First, the plaintiffs must have alleged facts sufficient to show that the individual defendants violated a constitutional right.  See *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Second, the plaintiffs must show that the constitutional right was clearly established at the time of the individual defendants'

alleged misconduct.  *Id*.  "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  *Id*. at 244 (internal quotations omitted).

This court is permitted to consider the two prongs of the qualified immunity test in any order.  *Id*. at 236.  In considering the second prong of the test first, it is clear that the individual defendants actions were not objectively unreasonable.  The principal issue remaining in this case is whether the defendants violated Section 366.178(c)'s requirement that the fee be used "to recover the cost of collecting the unpaid toll."  See *supra* section II.B.2.a.ii.  However, this provision permits the NTTA to charge "not more than $100" as the administrative fee.  Texas Transportation Code § 366.178(c).  By charging a $25.00 or $8.33 transaction fee, which is well below the $100.00 limitation, the directors and officers of the NTTA could plausibly have thought that they were in compliance with the statute.  Therefore, their actions were not objectively unreasonable, and thus they are entitled to qualified immunity.

## III.  CONCLUSION

For the reasons stated above, the defendants' Rule 12(b)(1) motion to dismiss the plaintiffs' claims for lack of jurisdiction is **DENIED**, but their Rule 12(b)(6) motion to dismiss, for failure to state a claim, the plaintiffs' claims under the Excessive Fines Clause of the Eighth Amendment, the Equal Protection Clause of the Fourteenth Amendment to the federal constitution, the right to enjoy property

without unlawful deprivation under Article 1, Sections 17 and 19 of the Texas Constitution, the right to equal treatment and protection under Article 1, Section 2 of the Texas Constitution, and the prohibition of excessive fines under Article 1, Section 13 of the Texas Constitution is **GRANTED**, and those claims are **DISMISSED**.  Furthermore, the defendants' Rule 12(b)(6) motion to dismiss all of the claims brought against the individual defendants is **GRANTED**.  The NTTA's Rule 12(b)(6) motion to dismiss the plaintiffs' federal constitutional claim under the Due Process Clause of the Fourteenth Amendment is **DENIED.**

  **SO ORDERED**.

November 14, 2011.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**