UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


MIRNA REYES, ET AL.,                )
                                    )
              Plaintiffs,           )
                                    )        CIVIL ACTION NO.
VS.                                 )
                                    )        3:10-CV-0868-G
NORTH TEXAS TOLLWAY                 )
AUTHORITY (NTTA),                   )
                                    )
              Defendant.            )


### MEMORANDUM OPINION AND ORDER

Before the court is the defendant's motion for summary judgment on threshold

legal issues (docket entry 76).  For the reasons stated below, the motion is denied on

the defendant's reading of pre-amendment Texas Transportation Code § 366.178 and

on the plaintiffs' substantive due process claim, but granted on the plaintiffs'

procedural due process claim.

## I.  BACKGROUND

### A.  Factual Background

This case concerns fees charged for unpaid tolls.  In 1997, the Texas

Legislature authorized the establishment of the North Texas Tollway Authority

("NTTA") via the Regional Tollway Authority Act. *See* Plaintiffs' Second Amended

Complaint ("Complaint") ¶ 11 (docket entry 72); Defendant's Answer to Plaintiffs'

Second Amended Complaint ("Answer") ¶ 11 (docket entry 75); TEX. TRANSP. CODE

§§ 366.001-366.409. At all times relevant to this litigation -- May 1, 2008 to

August 31, 2011 -- drivers on NTTA roads had three different payment options: a toll

booth for cash and coins, a TollTag account, and the ZipCash program. Complaint

¶¶ 12, 35-37. The TollTag is a transponder that drivers can obtain from the NTTA

and affix to the inside of their vehicles. Answer ¶ 22. The TollTag is linked to a

payment account and the appropriate toll is deducted from the account each time the

TollTag passes through a toll point. *Id.* In the ZipCash program, on the other hand,

the NTTA records the license plate number of any vehicle passing through the toll

point and mails a monthly invoice to the registered owner of the vehicle. Complaint

¶¶ 12, 23. The plaintiffs allege that the NTTA charged ZipCash customers fifty

percent more than TollTag customers per toll to cover the cost of collecting the toll.

Complaint ¶ 12 n.5; Plaintiffs' Brief in Response to Defendant's Motion for

Summary Judgment on Threshold Legal Issues ("Plaintiffs' Response") at 20 (docket

entry 80). The NTTA admits that it charged ZipCash customers more than TollTag

customers, but denies that the difference was fifty percent. Answer ¶ 12 n.4.

Furthermore, the plaintiffs allege, but the NTTA denies, that the NTTA billed

TollTag customers as ZipCash customers in the event that any problems arose with the payment accounts linked to the TollTags.  *See* Complaint ¶ 23; Answer ¶ 23.

The named class representatives for the plaintiffs are Mirna Reyes, Jennifer Bunch, Greg Williams, Deborah Gilbert, and Emanuel Lewis.  Complaint ¶¶ 25-33. These named plaintiffs, and the classes they seek to represent, did not pay their tolls and were charged administrative fees of $25 per unpaid toll before March 2010 and $8.33 per unpaid toll after March 2010.  Brief in Support of the NTTA's Motion for Summary Judgment on Threshold Legal Issues ("Defendant's Brief") at 2-3 (docket entry 77).  The plaintiffs do not dispute that the NTTA was allowed to charge fees -- they acknowledge that at all times relevant to this litigation, section 366.178 of the Texas Transportation Code authorized the NTTA to charge fines and administrative fees to drivers who failed to pay the full amount of tolls that they were charged in their invoices and subsequent notices of nonpayment.  *See* Complaint ¶ 14 n.6; Act of June 6, 2007, 80th Leg., R.S., ch. 258, § 4.03 (amended June 19, 2009); Act of June 19, 2009, 81st Leg., R.S., ch. 770, § 1 (amended Sept. 1, 2009); Act of June 19, 2009, 81st Leg., R.S., ch. 918, § 5 (amended Sept. 1, 2011) (current version at TEX. TRANSP. CODE § 366.178).[1]  Rather, the plaintiffs allege that these administrative

---

[1]      During the relevant time period of May 1, 2008 to August 31, 2011, section 366.178 underwent two amendments, but neither affected the portions of the statute at issue in this case.  The statute was not materially changed for purposes of this case until it was amended on September 1, 2011.  The previous versions of the statute at issue in this case will hereinafter be collectively referred to as "pre-

(continued...)

fees were entirely disproportionate to the tolls they failed to pay.  Complaint ¶¶ 25-

33.  Specifically, the plaintiffs allege that the NTTA charged Bunch $350 in

administrative fees for less than $20 in unpaid tolls, and charged Lewis over $10,000

in administrative fees for unpaid tolls totaling $300.  *Id.* ¶¶ 27, 33.  The named

plaintiffs, and the classes they seek to represent, include drivers who paid the

administrative fees and drivers who refused to pay the fees.  See *id.* ¶¶ 25-33.

## B.  Procedural Background

The plaintiffs originally filed this suit in the 191st Judicial District Court of

Dallas County on March 31, 2010.  *See* Defendants' Notice of Removal at 1-2

(docket entry 1).  The defendants removed the case to this court on April 30, 2010

on the grounds that the case presents a federal question.  *Id.* at 2.  On November 14,

2011, the court dismissed the plaintiffs' claims against six individual defendants and

also dismissed all of the claims against the NTTA except for the plaintiffs' federal

constitutional claim under the Due Process Clause of the Fourteenth Amendment.

*See* Memorandum Opinion and Order of November 14, 2011 at 31-32 (docket entry

31).  On December 6, 2012, the court received notice that the plaintiffs' attorney had

been disbarred, and the court ordered the plaintiffs to retain new counsel or proceed

pro se by January 7, 2013.  *See* Order of December 6, 2012 at 1-2 (docket entry 49).

---

[1](...continued)
amendment section 366.178."

After the plaintiffs had retained new counsel, they filed their second amended complaint on November 13, 2013. *See generally* Complaint.  At the heart of the plaintiffs' second amended complaint are the assertions that (1) pre-amendment section 366.178(c) required a correlation between the cost of recovering unpaid tolls and the administrative fees charged by the NTTA, and (2) the administrative fees charged by the NTTA greatly exceeded the cost of recovering unpaid tolls.  Complaint ¶¶ 14-16.  The plaintiffs further allege that because the NTTA exists under color of state law, and the NTTA's authority is defined by state law, the administrative fees in excess of statutory authorization violated due process.  Complaint ¶¶ 59-61.  The plaintiffs also set forth a new class (and claim) in the second amended complaint made up of TollTag customers whom the NTTA converted to using ZipCash after payment issues with their TollTag accounts arose.  *Id.* ¶ 36.  They argue that by unilaterally converting TollTag customers to ZipCash customers whenever there was a problem with a TollTag payment account, the NTTA violated the due process rights of the TollTag customers.  *Id.* ¶¶ 36, 63.

The court granted the NTTA leave to move for summary judgment on two threshold legal issues.  *See* Order of November 5, 2013 (docket entry 68).  The defendant's motion for summary judgment lists the threshold legal issues as:

> (1)    Did the former version of Section 366.178 of the Transportation Code require a correlation between the administrative fee charged by the

NTTA and "the cost of collecting the unpaid toll?"; and

(2)     If Section 366.178 required a correlation, did a lack of correlation constitute a violation of due process?

The NTTA's Motion for Summary Judgment on Threshold Legal Issues ("Defendant's Motion") at 1 (docket entry 76).  In moving for summary judgment, the defendant argues that if the court answers *no* to either of the threshold legal questions, then the defendant is entitled to judgment as a matter of law.  *Id.*

The NTTA also moves for summary judgment on the issue of whether converting TollTag customers to ZipCash customers violated procedural due process. *Id.* at 2.  Since that issue was not raised until the plaintiffs filed their second amended complaint, the issue was not originally listed as a threshold legal issue to be included in the defendant's motion for summary judgment.  *See* Order of November 5, 2013 at 2.  However, in the NTTA's motion for summary judgment, the NTTA argues that the issue is primed for summary disposition without the need for any further factual development.  *See* Defendant's Brief at 4.  The court agrees, and will consider this third threshold question below.

The plaintiffs filed a response to the defendant's motion for summary judgment, *see* Plaintiffs' Response, and the NTTA filed a reply in support of its motion.  *See* Defendant's Reply to Plaintiff's Response to the NTTA's Motion for

Summary Judgment on Threshold Legal Issues ("Defendant's Reply").  The motion is now ripe for decision.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a), (c)(1).[2]  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving

---

[2]        Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive.  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## B.   Interpretation of Section 366.178

At all times relevant to this case, section 366.178(b)-(c) read as follows:

> (b)  A person who fails or refuses to pay a toll provided for the use of a project is liable for a fine not to exceed $250, plus an administrative fee incurred in connection with the violation.

> (c)  If a person fails to pay the proper toll:

> (1)  on issuance of a notice of nonpayment,
> the registered owner of the nonpaying vehicle
> shall pay both the proper toll and the
> administrative fee; and
>
> (2)  an authority may charge an
> administrative fee of not more than $100 to
> recover the cost of collecting the unpaid toll.

TEX. TRANSP. CODE § 366.178(b)-(c) (pre-amendment).  The plaintiffs insist that the statute requires a correlation between the administrative fees charged under section 366.178(c)(2) and "the cost of collecting the unpaid toll."  *See* Complaint ¶¶  14-15. The NTTA responds that no such correlation is required.  *See* Defendant's Brief at 5-7.

### 1.  *Legal Standard*

"When interpreting a statute, [Texas courts] look first and foremost to the plain meaning of the words used."  *First American Title Insurance Company v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008), *cert. denied*, 556 U.S. 1221 (2009).  When the court finds that "a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity."  *Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864, 865-66 (Tex. 1999).  Furthermore, when a "'statute is clear and unambiguous, [the court] must apply its words according to their common meaning' in a way that gives effect to every word, clause, and sentence."  *First American Title Insurance*, 258 S.W.3d at 631 (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)).  Therefore, only when a court finds the language of a statute

to be ambiguous will the court apply rules of construction.  See *Texas Water Commission v. Brushy Creek Municipal Utility District*, 917 S.W.2d 19, 21 (Tex. 1996).  "One of those 'dominant rules of construction' requires [the court] to give 'serious consideration' to the '[c]onstruction of a statue by the administrative agency charged with its enforcement.'"  *First American Title Insurance*, 258 S.W.3d at 632 (quoting *Tarrant Appraisal District v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993)).  However, if the language of a statute shows that the "[l]egislature's choice is clear," the Texas Supreme Court refuses to "judicially engraft" language into a statue "[u]nder the guise of agency deference."  See *Liberty Mutual Insurance Company v. Adcock*, 412 S.W.3d 492, 493 (Tex. 2013).  Therefore, "an agency has no authority to 'exercise what is effectively a new power, or a power contradictory to the statute, on the theory such a power is expedient for administrative purposes.'"  *Id.* at 494 (quoting *Public Utility Commission of Texas v. City Public Service Board of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001)).

## 2.  *Application*

The NTTA presents a two-fold argument as to why pre-amendment section 366.178 did not require its administrative fees to correlate with the cost of collecting unpaid tolls.  *See* Defendant's Brief at 4-13.  It first argues that the plain language of section 366.178 does not require such a correlation.  *Id.* at 4-7.  The NTTA then argues that even if the court finds that the statute is ambiguous, the court must give

great deference to the NTTA's interpretation of the statute because it is the government entity charged with administering the statute.  *Id.* at 7-13.

Importantly, the NTTA's two-step approach ignores the possibility that the court may find that the plain language of section 366.178 requires correlation between the administrative fees and the cost of collecting unpaid tolls.  The Supreme Court of Texas recently held that when the legislature's intent is clear from the plain language of a statute, the court affords no deference to an agency's interpretation of that statute.  *Liberty Mutual Insurance*, 412 S.W.3d at 493-98.  Thus, if the court finds that the plain language of section 366.178 unambiguously requires the NTTA's administrative fees to correlate to the cost of collecting unpaid tolls, then the court need not give any deference to the NTTA's interpretation.

In its plain-language argument, the NTTA contends that the language of pre-amendment section 366.178(c)(2) -- "an authority may charge an administrative fee of not more than $100 to recover the cost of collecting the unpaid toll" -- means that "the NTTA had wide discretion to determine the amount of the administrative fee, as long as the fee did not exceed $100."  *See* Defendant's Brief at 5.  The NTTA offers three main arguments in support of the "plain meaning" it gleans from section 366.178.  First, it maintains that the use of the word "may" implies a grant of discretionary power but does not entail a limitation.  *Id.* at 6.  Second, the NTTA urges that the phrase "to recover the cost of collecting the unpaid toll" is not a

restriction upon the administrative fee, but merely an explanation of the reason for the fee.  *Id.*  Finally, the NTTA argues that the Texas legislature knew how to draft a statute that clearly limited a fee to an associated cost, and that it would have done so with section 366.178 had it actually intended to limit the administrative fee to the cost of collecting the unpaid toll.  *Id.*

Before addressing each of the NTTA's arguments in turn, it is important to recognize that the NTTA's arguments ignore the fact that the language and structure of section 366.178 make it clear that the administrative fee in subsection (c) is distinctly separate from the fine that the NTTA is authorized to charge under subsection (b).  If the administrative fee is not meant to be correlated to the cost of collecting the unpaid toll, there is no rational explanation for the distinction between the administrative fee and the fine.  The concept of an administrative fee that is not meant to have any correlation to administrative costs, but can be set arbitrarily so long as it below $100, is indistinguishable from a fine.  If such were the case, the statute could simply provide for a fine not to exceed $350 (*i.e.*, the $250 fine in subsection (b) plus the amount of up to $100 specified in subsection (c)).

As to the NTTA's specific contentions, the court is unconvinced by the NTTA's argument that the word "may" implies that the NTTA has discretion in deciding whether the administrative fee must correlate with the cost of collecting the toll.  While the word "may" does imply a grant of permission and discretion, that

permission simply refers to the NTTA's ability to charge an administrative fee.  *See*

Plaintiffs' Response at 9.  If the NTTA decides to charge an administrative fee, it may

do so.  However, if the NTTA does decide to charge an administrative fee, that fee

must be correlated to the cost of collecting the unpaid toll.  *Id.*

Furthermore, the phrase "to recover the cost of collecting the unpaid toll" quite

clearly imposes a limitation on the administrative fee, and is not merely an

explanation of the fee's purpose.  The NTTA's interpretation of section 366.178 is

effectively no different than if section 366.178(c)(2) simply read "an authority may

charge an administrative fee of not more than $100."  *See* Plaintiffs' Response at 8-9.

Thus, the NTTA's proposed interpretation of the statute renders an entire phrase

superfluous, in direct violation of the Texas Supreme Court's instruction to "give[]

effect to every word, clause, and sentence."  See *First American Title Insurance*, 258

S.W.3d at 631.  Furthermore, the NTTA's argument that the phrase merely explains

the reason for the administrative fee but does not impose a limit on the fee returns us

to the confusing question: what is an administrative fee if it is not required to have

any correlation to administrative costs?  Once again, under such an interpretation the

administrative fee would be indistinguishable from the fine, but the statute clearly

distinguishes between the two.

Lastly, the court acknowledges that the legislature could possibly have drafted

the statute to make the required correlation between the administrative fee and the

cost of collecting the unpaid toll even clearer, as the NTTA argues. *See* Defendant's Brief at 6. However, for the above reasons, the court concludes that regardless of these hypothetical alternatives, the plain language of section 366.178 could only lead to one reasonable interpretation -- that administrative fees must be tied to the cost of collecting unpaid tolls.

Therefore, while the NTTA is correct in asserting that its interpretation deserves deference if section 366.178 is ambiguous, the court concludes that section 366.178 is not ambiguous and that its plain meaning requires a correlation between the administrative fee and the cost of collecting an unpaid toll. The court need not engage in the deferential analysis proposed by the defendant. *See* Defendant's Brief at 7-13. Summary judgment on the NTTA's first threshold question, relating to the NTTA's interpretation of pre-amendment Texas Transportation Code § 366.178, is therefore denied.

## C. Substantive Due Process Claim

Because the court concludes that pre-amendment section 366.178 required a correlation between administrative fees and the cost of collecting unpaid tolls, it must now address the NTTA's second threshold question -- that is, whether charging administrative fees that do not correlate to collection costs could constitute a violation of due process.

1. *Legal Standard*

The Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV.  In Texas, money is considered property for purposes of the Fourteenth Amendment.  *Canal Insurance Company v. Hopkins*, 238 S.W.3d 549, 568 (Tex. App.--Tyler 2007, pet. denied) (citing *Norris v. City of Waco*, 57 Tex. 635, 643 (Tex. 1882)).  As a result, the state cannot deprive people of their money without due process.  See *Woodard v. Andrus*, 419 F.3d 348, 353-54 (5th Cir. 2005).  Plaintiffs can sue under 42 U.S.C. § 1983 for violations of the constitution, including the Fourteenth Amendment, if they can prove that a defendant deprived them of a constitutional right or privilege while acting under color of state law.  *See* 42 U.S.C. § 1983.

The Supreme Court of the United States has recognized that "due process protection in the substantive sense limits what the government may do in both its legislative and its executive capacities."  *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal citation omitted).  While the central concern of due process is protecting individuals against any type of arbitrary government action, the "criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a government officer that is at issue." *Id.* at 845-46.  The Court held that "only the most egregious official conduct" is so fatally arbitrary that it violates

due process.  *Id.* at 846.  While the Court in *Lewis* endorsed a test that asks whether executive conduct "'shocks the conscience'" and "violates the 'decencies of civilized conduct,'" the situation before the Court in that case involved a high speed police chase.  *Id.* at 836-37, 846 (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952)).  The Court went on to distinguish between situations that require fast action on behalf of the executive, like police chases, and those that afford the executive time for deliberation and forethought.  *Id.* at 850-53.

In cases where a plaintiff alleges a violation of substantive due process by executive or quasi-legislative action in a situation that affords a government actor time for deliberation, the government action is subject to a rational basis test.  See *Vineyard Investments, L.L.C. v. City of Madison, Mississippi*, 440 F. App'x 310, 313 (5th Cir. 2011), *cert. denied*, __ U.S. __, 132 S.Ct. 1865 (2012); *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006); *FM Properties Operating Company v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996).  Under the rational basis test, the "government action comports with substantive due process if the action is rationally related to a legitimate government interest."  *FM Properties*, 93 F.3d at 174.  The effect of this rational basis review is that substantive due process is not violated merely because government executive or quasi-legislative action violates a state statute -- rather, due process is only implicated if the government action was also not rationally related to a legitimate government interest.  See *id.*  The determination of

whether such government action "has the requisite rational relationship to a

legitimate government interest is a question of law." *Mikeska*, 451 F.3d at 379

(quoting *FM Properties*, 93 F.3d at 172 n.6) (internal quotation marks omitted).

## 2. *Application*

The NTTA has moved for summary judgment on the ground that even if

section 366.178 requires a correlation between administrative fees and costs of

collection, a lack of correlation does not constitute a violation of due process.  A lack

of correlation would constitute a violation of due process if the NTTA's

administrative fees (1) deprived the plaintiffs of a constitutional right, and (2) were

not rationally related to a legitimate government interest.  The first question must be

answered in the affirmative, as the NTTA deprived plaintiffs of their money, which is

considered property for the purposes of the Fourteenth Amendment under Texas law.

See *Canal Insurance Company*, 238 S.W.3d at 568.  The court must therefore turn to

the second question and determine whether the NTTA has established that its

administrative fees were rationally related to a legitimate government interest.

Before pursuing that inquiry, it is important to clarify the significance of the

court's finding, and the assumption included within this summary judgment question,

that section 366.178 did *not* authorize the NTTA to charge administrative fees not

correlated with the cost of recovering unpaid tolls.  If the court *had* found that the

statute allowed such fees, then any due process complaint would have to be directed

- 17 -

against the legislative action behind the passage of section 366.178, rather than the executive or quasi-legislative actions of the NTTA in deciding how to apply section 366.178. That is, the plaintiffs would have to allege that the statute itself unconstitutionally deprived them of their property. Instead, the focus of the plaintiffs' due process claim is on whether the NTTA's violation of that statute could constitute a violation of due process. To make that showing, the plaintiffs will need to establish that the fees that the NTTA charged in excess of the cost of collecting unpaid tolls were not still "rationally related to some other independent and legitimate [government] interest." See *Mikeska*, 451 F.3d at 380.

The NTTA confuses this issue in its briefing. Most of the rationales that it proffers are irrelevant, as they are presented as possible reasons that the Texas legislature would have drafted a statute that allowed the NTTA to charge fees in excess of the cost of recovering unpaid tolls. For instance, the defendant argues that "[t]he Texas Legislature had multiple conceivable rational bases for allowing the NTTA to charge an administrative fee up to $100," and that "[t]he Court can easily conceive of multiple rational bases to support the Legislature's decision to allow the NTTA to charge an administrative fee up to $100." Defendant's Brief at 15-16. In another section of its motion, the NTTA claims to be arguing that "even if an [uncorrelated] administrative fee . . . violates Section 366.178, there is no violation of substantive due process," but in support of that assertion, it again simply states that

- 18 -

"there are at least two conceivable rational bases for *the Legislature's decision* to allow the NTTA to charge up to $100." *Id.* at 18 (emphasis added).

However, the court has already decided, and the defendant's threshold summary judgment question assumes *arguendo*, that the legislature did in fact *not* authorize the NTTA to charge these uncorrelated fees. The distinction between possible rationales that the Texas legislature could have for passing a piece of legislation and those that the NTTA could have for taking a certain course of action is far from a mere "quibble," as the defendant flippantly asserts in its reply. *See* Defendant's Reply at 17. Rather, the court's inquiry must focus solely upon *the NTTA's* possible justifications for violating the state statute and charging higher fees than were necessary to recover unpaid tolls -- theoretical justifications for why the *Texas legislature* could have passed a statute that allows such fees are irrelevant.[3]

The NTTA makes only one argument, in its reply, explaining why it could have reasonably believed that uncorrelated fees were rationally related to a legitimate government interest. There, the NTTA asserts that "[a] rational decision-maker could have theoretically concluded that, if the NTTA added all of its direct and

---

[3]     This is not to say that the NTTA could not have had the same reasons for charging uncorrelated fees that the Texas legislature could have had for passing a statute that allowed the NTTA to do so. The NTTA did not make such an argument. Instead, it offered a number of possible rationales for a theoretical legislative act that would have allowed the NTTA to charge uncorrelated fees, but, as discussed *infra*, only offered one rationale for why the NTTA itself could have thought that charging such fees was rationally related to a legitimate government interest.

- 19 -

indirect costs of collecting tolls (including overhead, hardware, software, etc.) and

divided that number by the number of unpaid tolls it actually successfully collects,

$25 would be a reasonable estimate." *See* Defendant's Reply at 17.

        In reviewing this proffered rationale, the court does not "sit as a

superlegislature to judge the wisdom or desirability of state legislative policy

determinations." *FM Properties*, 93 F.3d at 175.  However, the court still must ensure

that the government is not "arbitrarily abus[ing] its power," *Simi Investment Company,*

*Inc. v. Harris County, Texas*, 236 F.3d 240, 249 (5th Cir. 2000), *cert. denied*, 534 U.S.

1022 (2001), and must protect against government action that is "'clearly arbitrary

and unreasonable.'" *FM Properties*, 93 F.3d at 174 (quoting *Village of Euclid, Ohio v.*

*Ambler Realty Co.*, 272 U.S. 365, 395 (1926)).  The court concludes that on its face,

the NTTA's stated reason for the uncorrelated fees is not reasonable.  Rather, the size

of these fees -- $25 (and then $8.33 after March 2010), not just per notice, but per

toll on each notice, resulting in $350 in administrative fees for less than $20 in

unpaid tolls, and over $10,000 in administrative fees for $300 in unpaid tolls, *see*

Complaint ¶¶ 27, 33 -- strikes the court not as a reasonable calculation related to

operating expenses, but as an arbitrary and irrational state action.  This rationale

becomes even more dubious in light of the plaintiffs' assertion that the NTTA

charged the habitual violator list alone more than $400 million in administrative fees,

while the entire operating expenses of the NTTA from 2009 to 2011 were $292.2

million.  *See* Plaintiff's Response at 4-5.  The court concludes that the decision to

charge such fees cannot be supported by the NTTA's proffered justification without

the submission of some supporting evidence.

In so holding, the court finds the current position of this case analogous to the

situation before the Fifth Circuit in *Mikeska v. City of Galveston*.  In that case, the city

of Galveston used a statute related to the maintenance of beaches to justify refusing

to connect utilities to beach houses that, as the result of a storm that destroyed much

of the beachfront vegetation, were now beyond the beach vegetation line.  *Mikeska*,

451 F.3d at 378-79.  The court held that:

> The rational basis test requires not only a legitimate
> state interest, but also that the government action is
> rationally related to furthering that interest.  There is
> indeed a legitimate interest at stake -- the protection of
> public access to the public beach -- but, at this stage, the
> government fails to provide any rational reason why
> refusing to reconnect utilities to houses found on a public
> beach furthers the end of protecting public access to public
> beaches.

*Id.* at 380.  The court went on to state that "[a]fter further development of the

record, facts may come to light that indeed serve to indicate that there was a rational

basis for the government's action."  *Id.*  As hypothetical examples of the sort of

factual showing that could satisfy the state's burden, the court reasoned that the state

could attempt to show that "reconnecting the utilities involved hanging obtrusive

wires or placing unsightly water meters that would discourage public use of the beach." *Id.* at 381.

Like the Fifth Circuit in *Mikeska*, the court concludes that more factual development is necessary here before it can determine whether the NTTA's actions were rationally related to a legitimate government interest.  It appears to the court that the NTTA cannot make such a showing without presenting some evidence on at least some of the following: its budgetary calculations, the amount of administrative fees charged to each person, the percentage of people who normally remit payment upon notice of unpaid tolls, or the cost of collecting unpaid tolls.  Because the NTTA has not presented evidence on any of those issues, the possibility remains that if the NTTA did in fact fail to correlate its administrative fees with the cost of recovering unpaid tolls in violation of section 366.178, charging those fees could have constituted an unreasonable deprivation of property and thus have violated the plaintiffs' substantive due process rights.  As a result, the defendant's motion for summary judgment on this question must be denied.[4]

_____

[4]      In their summary judgment filings, the parties dispute whether charging uncorrelated fees could constitute a violation of procedural due process in addition to the plaintiffs' substantive due process claim.  *See* Plaintiffs' Response at 21; Defendant's Reply at 18-19.  Because the court agrees with the defendant that the plaintiffs' "underlying factual allegations do not complain about the NTTA's procedures," the court will consider their due process claim to be what it most logically reads as -- a claim for violations of their substantive due process rights.  The allegations supporting the due process claim can be distinguished from the complaint's references to the conversion of TollTag user to ZipCash users, which

(continued...)

### D.  Procedural Due Process Claim

Lastly, the NTTA moves for summary judgment against the plaintiffs' newly added claim on behalf of customers who were converted from being TollTag users to using ZipCash by the NTTA after issues with their TollTag payments arose.  *See* Defendant's Brief at 4.  Because the court agrees with the defendant that the issue of whether converting TollTag customers to ZipCash customers violated procedural due process is appropriate for summary judgment, the court will address this third threshold question now.

### 1.  *Legal Standard*

"[T]he Due Process Clause provides that certain substantive rights -- life, liberty, and property -- cannot be deprived except pursuant to constitutionally adequate procedures."  *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985).  While the laws of a state create and define property interests, the constitution guarantees that the state will not deprive the citizens of that property without due process.  *Id.* at 538.  As discussed above, money is considered property under Texas law, see *Canal Insurance Company*, 238 S.W.3d at 568, so the state cannot deprive people of their money without due process.  *Woodard*, 419 F.3d at 353-54.

---

[4](...continued)
repeatedly mention notice and consent.  *See* Complaint ¶¶ 23, 29, 31, 43.

"Due process, as [the Supreme Court] often has said, is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The Supreme Court has identified three factors to consider when determining "the specific dictates of [procedural] due process" required for a given situation:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Additionally, the Supreme Court has "described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Loudermill*, 470 U.S. at 542 (emphasis in original) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)).

In situations involving contracts between individuals and the state, the Fifth Circuit has distinguished between breach of contract claims and claims that the state deprived the plaintiff of property without due process of law.  See *Braden v. Texas A & M University System*, 636 F.2d 90, 93 (5th Cir. 1981).  While due process "does not make a federal case out of every breach of contract by a state agency," a plaintiff may bring "claims for deprivation of property without due process even though the property interest is alleged to be founded on a contract."  *Id.*  Furthermore, the

Supreme Court has held that "the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571-72 (1972).

### 2. *Application*

The plaintiffs allege that the NTTA deprived them of procedural due process by unilaterally extinguishing their TollTag status and charging them the ZipCash rate for tolls. Complaint ¶¶ 23, 29, 31, 43; Plaintiffs' Response at 21. The plaintiffs complain that the NTTA executed this conversion without "notice," "consent," or "an opportunity to rectify any billing issues." *Id.* ¶¶ 29, 43, 45. They allege that the NTTA informed TollTag customers that they would be charged a certain rate and then unilaterally converted those customers to ZipCash customers and charged them a fifty percent higher toll. Complaint ¶ 23.

Even if the expansive notion of property under the due process clause encompasses the plaintiffs' interest in their status as TollTag customers, the court concludes that there is no violation of due process. Application of the procedural due process factors enumerated in *Mathews v. Eldridge* reveals that the NTTA's actions provided the plaintiffs with adequate process. First, the private interest affected was *de minimis*. Even if the NTTA breached a contract with TollTag customers by converting them, the result was not the loss of some constitutional right. Rather, the plaintiffs simply became ZipCash customers, and the NTTA thereby charged them

with tolls in the exact manner prescribed by the legislature.  Therefore, the interest

affected was merely a benefit over and beyond the default toll collection method

provided for in the Texas Transportation Code.  Moreover, the plaintiffs were

notified of their conversion in their monthly invoices, so if they corrected the

problems with their TollTag payment accounts, their only losses would be the

difference between the ZipCash rate and the lower TollTag rate for one month's

worth of tolls.

The second factor -- "the risk of an erroneous deprivation of such interest

through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards," *Mathews*, 424 U.S. at 335 -- also weighs against the

plaintiffs.  According to the record before the court, the NTTA converted the

plaintiffs to ZipCash customers because of problems with their personal bank

accounts or credit cards.[5]  *See* Complaint ¶ 23.  The plaintiffs do not present any

arguments as to why this method of changing customers' TollTag status somehow

created a risk of mistaken conversions.  Furthermore, the plaintiffs were already in

control of the risk factor -- their bank accounts or credit cards -- and presumably

would know whether their account balances had reached zero or their cards had

---

[5]      The present record is not entirely clear on the circumstances
surrounding the conversion of TollTag customers to ZipCash users.  However, the
plaintiffs' complaint contains the language:  "when the payment source linked to their
TollTags no lager worked (e.g., the linked credit card expired or was cancelled)."
Complaint ¶ 23.

expired.  As such, the court concludes that there was little probable value in any additional or substitute procedural safeguards, such as some special reminder from the NTTA before converting them to ZipCash customers, especially considering that monthly invoices notified the plaintiffs of the conversion.

Finally, any additional or substitute procedural requirements would likely not be worth the heightened "fiscal and administrative burdens" that would be placed upon the NTTA.  The monthly invoices served as a notice to the plaintiffs that they had been converted to ZipCash customers.  Any further notice requirements, such as requiring the NTTA to compile and send letters to the plaintiffs alerting them to their TollTag account statuses as soon as they fell into default, would have imposed additional costs on the NTTA without adding much in the way of procedural safeguards.  Therefore, because all three of the *Mathews* factors weigh against the plaintiffs' procedural due process claim, the court concludes that summary judgment against the plaintiffs' procedural due process claim must be granted.

## III.  <u>CONCLUSION</u>

For the reasons stated above, the defendant's motion for summary judgment is **DENIED** as to the NTTA's reading of pre-amendment Texas Transportation Code § 366.178, **DENIED** as to the plaintiffs' substantive due process claim, and **GRANTED** as to the plaintiffs' procedural due process claim.

**SO ORDERED**.

June 12, 2014.

_____
A. JOE FISH
**Senior United States District Judge**